UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



GMS INDUSTRIAL SUPPLY, INC.,

     Plaintiff,

v.                         CIVIL ACTION NO. 2:19cv324

G&S SUPPLY, LLC, et al.,

     Defendants.

### PRELIMINARY INJUNCTION ORDER

This matter comes before the court on Plaintiff GMS Industrial
Supply, Inc.'s ("GMS Industrial") Motion for Temporary Restraining
Order and Preliminary Injunction ("Motion for Injunctive Relief"),
filed on June 21, 2019. ECF No. 2. Each of the Defendants was
served between June 26 and June 29, 2019. ECF Nos. 25-29, 31, 34,
37-38, 40-41. Counsel for the Defendants entered an appearance in
the case on July 10, 2019. ECF Nos. 10, 11. The Defendant
subsequently filed their Response to GMS Industrial's Motion for
Injunctive Relief.[1] On July 25, 2019, the court held a hearing on

---

[1] On July 18, 2019, the Defendants filed a Motion and
accompanying Memorandum in Support seeking leave to file their
Response to GMS Industrial's Motion out of time. ECF Nos. 42, 43.
The Defendants filed their proposed Memorandum in Opposition to
the Motion for Injunctive Relief, as well as Declarations from the
Defendants, as exhibits to their Memorandum. ECF Nos. 43-1 - 43-9.
On July 22, 2019, United States Magistrate Judge Robert Krask
granted the Defendants' Motion to file their Response out of time.
ECF No. 45.

GMS Industrial's Motion for Injunctive Relief, which hearing was continued to July 26, 2019 and July 29, 2019. At the hearing, evidence was presented and argument was heard from counsel for all parties.[2] For the reasons set forth below, GMS Industrial's Motion for Injunctive Relief is **GRANTED IN PART AND DENIED IN PART**.

## I.

GMS Industrial argues that it is entitled to injunctive relief to (1) prevent the Defendants from soliciting current customers or former customers of GMS Industrial; (2) direct the Defendants to deliver all GMS Industrial confidential information or trade secrets in the Defendants' possession; (3) prevent the Defendants from using both GMS Industrial's trademark and G&S Supply's

---

[2] On July 24, 2019, the eve of the hearing on the Motion for Injunctive Relief, GMS Industrial filed a "Motion to Seal Exhibit Containing Trade Secrets" and a "Notice of Filing a Motion to Seal." ECF Nos. 48, 49. GMS Industrial stated that it intended to introduce at the hearing on the Motion for Injunctive Relief a flow chart that shows the steps GMS Industrial utilizes to develop its market and to price its products, and requested that the court seal such flow chart to prevent public disclose of GMS Industrial's confidential information. ECF No. 48 at 2. At the hearing, however, GMS Industrial did not offer such confidential information, but instead offered a totally redacted version of the flow chart, which featured only black boxes and arrows in between such boxes. Pl.'s Ex. 18 (exhibit from the July 25, 2019 hearing). As the court advised GMS Industrial at the hearing, the court cannot rule on a Motion to Seal without being able to see the document that is intended to be sealed. ECF No. 53 at 50(transcript of the July 25, 2019 hearing). GMS Industrial has not attempted to present the court with an unredacted copy of the flow chart at any time since the hearing. Accordingly, GMS Industrial's "Motion to Seal Exhibit Containing Trade Secrets," ECF No. 48, is **DENIED AS MOOT**.

trademark; (4) prevent the Defendants from using or disclosing any of GMS Industrial's confidential information or trade secrets; (5) prevent the Defendants from soliciting any current GMS Industrial employees or sales agents to leave GMS Industrial; and (6) prevent the Defendants with interfering with GMS Industrial's contracts. ECF No. 2 at 2 (Motion for Injunctive Relief).

Federal Rule of Civil Procedure 65 provides that the court may issue preliminary injunctions and temporary restraining orders ("TROs"). Id. The purpose of a TRO is to maintain the status quo until a preliminary injunction hearing can be held, and the purpose of a preliminary injunction is to maintain the status quo until a final trial on the merits can be held. Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 422 (4th Cir. 1999). The principal difference between a TRO and a preliminary injunction is that a TRO is of limited duration—lasting for no more than fourteen (14) days at issuance, although an extension may be granted—whereas a preliminary injunction remains in effect throughout pretrial proceedings, until a trial on the merits is held. Fed. R. Civ. P. 65(b)(2).

"[A] temporary restraining order is generally issued ex parte or after a hearing of a summary character." Dilworth v. Riner, 343 F.2d 226, 229 (5th Cir. 1965) (citations omitted). Where the court is presented with a TRO hearing, at which all parties appear, and the issues are fully litigated, the court properly converts the

application for a TRO into one for a preliminary injunction. 11A Charles Alan Wright & Arthur R. Miller, et al., Federal Practice & Procedure § 2951 (3d ed. 2019) (collecting cases). At the July 25, 26, and 29 hearing, the court received voluminous evidence and heard arguments from counsel for all parties. The court entertained all evidence and argument for injunctive relief. Accordingly, the court informed the parties at the hearing that it will consider GMS Industrial's Motion for Injunctive Relief as an application for a preliminary injunction, rather than a TRO, there being no need for the court to re-convene on this matter to receive further evidence. ECF No. 54 at 52–53.[3]

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (emphasis added). The court now turns to the facts established at the July 25, 26, and 29 hearing, and

---

[3] On June 22, 2019, GMS Industrial filed a Motion to Expedite Discovery and accompanying Memorandum in Support, asking the court to expedite the normal discovery schedule so that GMS Industrial could be more quickly heard on its Motion for a preliminary injunction. ECF Nos. 7, 8. Given that the court is considering now GMS Industrial's Motion as one for a preliminary injunction, GMS Industrial's Motion to Expedite Discovery, ECF No. 7, is **DENIED AS MOOT**. Discovery will proceed under the normal schedule for trial on the merits.

4

reviews them vis-à-vis GMS Industrial's request for a preliminary injunction, and the legal standard set forth in <u>Winter</u>.

II.

The court finds the following facts as a result of the testimony presented at the July 25, 26, and 29 hearing, and the exhibits introduced into evidence during the hearing.[4] GMS Industrial has been in business since 2001, and for its business sells industrial supplies to public customers such as the General Services Administration and the United States Armed Forces. ECF No. 53 at 16-17 (transcript of the July 25, 2019 hearing). Each of the individual Defendants—Westly Greer, Gregory K. Spires, Thomas Hayes, Sabrina Greer, Wayne Side, Mike Welton, and Gregory Sky Spires—previously worked for GMS Industrial as sales agents, with Westly Greer previously serving as GMS Industrial's Director of Sales. Pl.'s Ex. 21 (sales agent agreements made between GMS Industrial and the individual Defendants).

During the time the individual Defendants worked for GMS Industrial, they had access to documents on GMS Industrial's password-protected "customer service and data management portal,"

---

[4] Due to the length of the hearing on the Motion for Injunctive Relief, the transcript of the hearing spans three separate docket entries. ECF Nos. 53-55. The transcript has two different sets of page numbers: one set of page numbers assigned by ECF, and another set of page numbers appearing on the document that were not assigned by ECF. To avoid confusion, this Preliminary Injunction Order will cite to the transcript by referring only to its ECF citation.

an online service which GMS Industrial used to store confidential documents related to its business, such as its marketing techniques and trusted products source list. ECF No. 53 at 157, 159. Although access to especially sensitive documents was restricted even within GMS Industrial, Westly Greer, as GMS Industrial's Director of Sales, had access to a vast quantity of the documents stored on the customer service and data management portal. Id. at 55, 79.

In 2017, while still working at GMS Industrial, Defendants Westly Greer and Gregory K. Spires formed their own business, G&S Supply, LLC ("G&S Supply"). Def.'s Ex. A at 3-4 (Declaration of Westly Greer); Def.'s Ex. B at 5 (Declaration of Gregory K. Spires). G&S Supply's business is also focused on the sale of industrial products to public customers such as the United States Armed Forces. Id. Each of the individual Defendants, with the apparent exception of Gregory Sky Spires,[5] began working as sales agents for G&S Supply, while also continuing to work as sales agents for GMS Industrial. Id.; Def.'s Ex. C at 6, Def.'s Ex. D at 5, Def.'s Ex. E at 4, Def.'s Ex. H at 4 (Declarations of the individual Defendants, describing the time and manner at which they began selling products for G&S Supply).

---

[5] In his Declaration, Gregory Sky Spires denied under oath that he has ever sold any products for G&S Supply, Def.'s Ex. F at 3, the only individual Defendant who made such denial. The court did not receive evidence to contradict the Declaration of Gregory Sky Spires.

GMS Industrial's management was not aware of the existence of G&S Supply at the time of its founding in 2017. ECF No. 53 at 93. Once GMS Industrial's management became aware of G&S Supply in April 2019, each of the individual Defendants was terminated from GMS Industrial. Id. at 35. Subsequent to terminating the individual Defendants, GMS Industrial became aware that several of its customers are under the false impression that GMS Industrial and G&S Supply are "sister" companies. Id. at 188. GMS Industrial also obtained copies of several G&S Supply catalogues, and upon comparison with GMS Industrial's own catalogues determined that the two companies sell similar industrial products, and market their products in a similar manner. Id. at 45; see, e.g., Pl.'s Exs. 10-12 (G&S Supply catalogues from 2018 and 2019); Pl.'s Ex. 9 (GMS Industrial catalogue from 2019). GMS Industrial also became aware that G&S Supply had sold some products which did not meet the standards for product quality required by the United States Armed Forces. See Pl.'s Ex. 8 (documenting the discovery by Greg Naschansky, a GMS Industrial sales agent, of a "creeper" device sold by G&S Supply which was made in China, in contravention of the United States Armed Forces' policy of only purchasing products made in the United States); ECF No. 53 at 190-91 (testimony from Mr. Naschansky regarding his discovery of the "creeper" device

while meeting with a customer at Fort Sill, Oklahoma).[6] Both the references to "sister companies," and the similarity in company names and products, led at least one customer to question the quality of products sold by GMS Industrial, when in point-of-fact the product in question had been sold by G&S Supply. See ECF No. 53 at 190-91.

### III.

The court now turns to a review of each of the grounds raised by GMS Industrial in its Motion for Injunctive Relief, to determine whether GMS Industrial has met is burden for a preliminary injunction under the factors set forth in Winter.

### A. Customer and Employee Solicitation

### (Grounds 1 and 5)

GMS Industrial has failed to establish that the public interest is served by an injunction entirely prohibiting the Defendants from doing business with GMS Industrial's customers, such as the General Services Administration and the United States Armed Forces. There is a strong public interest in a competitive market, i.e., fair competition among businesses which sell products to public customers, and such public interest is not served by determining that any single private business has a "lock"

---

[6] The court found Mr. Naschansky to be an extremely credible, articulate, straight-forward witness, and the court attributes significant weight to his testimony.

on selling to public customers, such that they may enjoin others from competing on a level playing field. Because this strong public interest weighs against injunctive relief, GMS Industrial's Motion for Injunctive Relief to prevent the Defendants from soliciting current customers or former customers of GMS Industrial, and to prevent the Defendants from soliciting any current GMS Industrial employees or sales agents to leave GMS Industrial, weighs in favor of the Defendants, as long as no misappropriation of trade secrets or confidential information of GMS Industrial is involved in the solicitation. Moreover, the likelihood of success on the merits on this claim and irreparable harm are weak, thus the balance of equities here weighs in favor of the Defendants.

## B. Trade Secrets and Confidential Information
### (Grounds Two and Four)

GMS Industrial has established that it is likely to succeed on its misappropriation of trade secrets claim. Although the Defendants are entitled to use the experience and "know-how" they have gained through their work as salespersons and employees at GMS Industrial, and elsewhere in their careers, the court received credible evidence at the July 25, 26, and 29 hearing that, during their time selling products for GMS Industrial, the Defendants had access to numerous documents stored on GMS Industrial's customer service and data management portal. These documents include GMS Industrial's marketing techniques, pricing methods, sales agent

9

training protocol, and trusted product source list.[7] GMS Industrial derives independent economic value from these documents, which contain nonpublic information, and GMS Industrial took steps to maintain the secrecy of these documents by storing them on a password-protected customer service and data management portal.

GMS Industrial will suffer irreparable harm if these nonpublic documents, containing valuable information developed by and for GMS Industrial, remain or are held in the Defendants' possession while the Defendants compete against GMS Industrial, as the confidential information may be misappropriated for the Defendants' gain. The balance of the equities certainly tips in favor of GMS Industrial on this point, as the Defendants do not have any right to possess or use GMS Industrial's confidential information.  An injunction is also in the public interest to prevent unfair competition from the Defendants. Accordingly, GMS Industrial's Motion for Injunctive Relief to prevent the

---

[7] The court's ruling is restricted to documents created by GMS Industrial and stored on GMS Industrial's customer service and data management portal. The court did not receive sufficient evidence to determine that GMS Industrial possesses any trade secrets which are not set forth in a document stored on the customer service and data management portal, and the court is also concerned with the practical impossibility of enforcing an injunction, if violations cannot be proved with documentary evidence. See supra note 2 and accompanying text. Moreover, as stated in text, the court will not enjoin the Defendants from using their experience and "know-how" gained through their work as salespersons, which experience in and of itself is not a trade secret.

Defendants from using or disclosing any of GMS Industrial's confidential information or trade secrets, and to direct the Defendants to deliver all GMS Industrial's confidential or trade secret documents in the Defendants' possession,[8] weighs in favor of GMS Industrial.

## C. Trademark Infringement

### (Ground 3)

GMS Industrial has established that it is likely to succeed on the merits of its trademark infringement claim, given the similarity in name between GMS Industrial and G&S Supply, given the fact that the two companies sell similar products and solicit the same customers, and given the credible evidence the court received that some of GMS Industrial's customers perceive the two companies to be "sister" companies. Moreover, GMS Industrial has established that it will suffer irreparable harm in the absence of preliminary relief, especially considering the harm to GMS Industrial's business reputation that will arise from confusion between the two companies and the fact that G&S Supply may not be selling the same quality of product as GMS Industrial. The balance of equities tips in GMS Industrial's favor, and an injunction is in the public interest, given the credible evidence the court received that there is actual confusion in the marketplace between

---

[8] See supra note 7 and accompanying text.

these two companies. Accordingly, GMS Industrial's Motion for Injunctive Relief to prevent the Defendants from using both GMS Industrial's trademark and G&S Supply's trademark weighs in favor of GMS Industrial.

## D. Tortious Interference with Contract

### (Ground Six)

Injunctive relief is not appropriate as to GMS Industrial's tortious interference with contract claim, because GMS Industrial will not suffer irreparable harm in the absence of injunctive relief. "[F]inancial losses that can be recovered by a prevailing party at the close of litigation ordinarily will not justify preliminary relief." Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell, 915 F.3d 197, 218 (4th Cir. 2019). As the court concluded at the hearing on the Motion for Injunctive Relief, GMS Industrial can be made whole through money damages on its tortious interference with contract claim, if GMS Industrial prevails on this claim. ECF No. 54 at 107. Further, given the public interest in competitive business markets, injunctive relief is not warranted here at this juncture, as long as the competition is fair. Since the court is granting injunctive relief in regard to trade secrets, confidential information, and trademark infringement, the public interest and equities here do not weigh in favor of GMS Industrial. Accordingly, GMS Industrial's Motion for Injunctive Relief to prevent the Defendants with

interfering with GMS Industrial's contracts weighs in favor of the Defendants, as long as they adhere to the dictates of this Preliminary Injunction Order on the grounds to which it has been granted.

### E. Summary

For the reasons set forth above, GMS Industrial is entitled to injunctive relief to prevent the Defendants from using both GMS Industrial's trademark and G&S Supply's trademark, to prevent the Defendants from using or disclosing any of GMS Industrial's confidential information or trade secrets, and to require the Defendants to deliver to GMS Industrial all confidential information or trade secret documents in the Defendants' possession. GMS Industrial is not entitled to injunctive relief to prevent the Defendants from soliciting current customers or former customers of GMS Industrial, to prevent the Defendants from soliciting any current GMS Industrial employees or sales agents to leave GMS Industrial, or to prevent the Defendants from interfering with GMS Industrial's contracts, as long as these actions are done fairly and in accordance with this Preliminary Injunction Order.

### IV.

Having considered GMS Industrial's grounds in its Motion for Injunctive Relief, and having made findings with respect thereto, the court **GRANTS** a preliminary injunction and **ORDERS** the Defendants to take the following actions:

1. The Defendants Westly L. Greer, Gregory K. Spires, and Thomas Hayes shall change the name of their limited liability company, "G&S Supply, LLC," on or before September 30, 2019, to a name that will not be easily confused with "GMS Industrial Supply, Inc." The name "G&S Supply, LLC" shall not be used by the Defendants on any website after September 30, 2019. The Defendants shall provide the court evidence that the new entity has been properly registered in the chosen states as of September 30, 2019. The Defendants shall provide the court evidence that G&S Supply, LLC has been terminated as a corporate entity in all the states of its registration as of September 30, 2019.

2. The Defendants shall produce a new catalogue of their products, with the new name of their business, available for distribution on or before September 30, 2019, and thereafter shall not use or provide copies of any former catalogue with the name "G&S Supply, LLC" thereon or therein to any customers, or to any prospective customers, or on their website, or in any sales or advertising materials.

3. As the Defendants have solicitations pending, awards made, and orders have been placed for products offered by G&S Supply, LLC, under its current name and with its cage code number, the Defendants are entitled to fulfill such orders and solicitations, and to collect payments for any pending orders and/or solicitations made on or before September 30, 2019.

14

4. The Defendants shall not refer to G&S Supply, LLC, or their new business entity, as a "sister" company of GMS Industrial Supply, Inc.

5. On or before September 15, 2019, GMS Industrial, by counsel, shall submit to the court, <u>under seal</u>, with a copy to counsel for the Defendants, a list of confidential, proprietary, and/or trade secret documents, which have been stored on GMS Industrial's customer service and data management portal, which GMS Industrial believes any of the Defendants presently possess ("GMS Industrial's List").

6. Within fourteen (14) days of GMS Industrial's List being submitted to the court, each individual Defendant, by counsel, shall submit to the court, <u>under seal</u>, with a copy to counsel for GMS Industrial, a Declaration, made under oath, stating any and all documents in any form, paper or electronic, from GMS Industrial's List which are in his or her possession. Likewise, if an individual Defendant does not possess any document in any form, paper or electronic, on GMS Industrial's List, he or she shall submit the court, <u>under seal</u>, by counsel, a Declaration, made under oath, stating as such, with a copy to counsel for GMS Industrial. The Defendants shall return all such documents, in whatever form the Defendants possess them, and any copies thereof, in whatever form the Defendants possess them, to their counsel, who shall then submit them to GMS Industrial's counsel, within thirty (30) days

of GMS Industrial's List being submitted to the court. The Defendants are enjoined and restrained from using or disclosing any of the specific documents on GMS Industrial's List, absent further order of the court.

7. Both GMS Industrial and the Defendants, by counsel, shall certify to the court, on or before October 18, 2019, that compliance with paragraph 6 above is completed.

### V.

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). At the hearing on the Motion for Injunctive Relief, the court advised GMS Industrial that it would need to post a bond in order to receive injunctive relief, and offered GMS Industrial an opportunity to present information to aid the court's determination of the amount of the bond. ECF No. 54 at 108. To date, GMS Industrial has made no attempt to post security in support of its Motion for Injunctive Relief, nor has it made any attempt to estimate the amount of security that would be needed.

"In fixing the amount of an injunction bond, the district court should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for

harm it suffers as a result of an improvidently issued injunction or restraining order. The amount of the bond, then, ordinarily depends on the gravity of the potential harm to the enjoined party . . . ." Hoechst Diafoil Co., 174 F.3d at 421 n. 3. Accordingly, having considered the evidence presented by the Defendants as to the hardship that injunctive relief will cause to their business, Def.'s Exs. A-E, H (Declarations from the individual Defendants, describing the hardship they will face), and the claims made by GMS Industrial about the profitability of the Defendants' business and the intrusion of it on GMS Industrial's business, see, e.g., ECF No. 53 at 30, the court **FINDS** that a corporate surety bond in the amount of $1,000,000.00 is necessary, as a condition of injunctive relief, to pay the costs and damages sustained by any party later found to have been wrongfully enjoined or restrained. GMS Industrial is **ORDERED** to obtain a corporate surety bond, approved by the Clerk of this court, in the amount of $1,000,000.00, within fourteen (14) days of the entry of this Preliminary Injunction Order. After obtaining such approved corporate surety bond, GMS Industrial, by counsel, shall forward to counsel for the Defendants by certified mail a copy of the same, with proof of the mailing filed with the court.

17

**VI.**

For the reasons set forth above, GMS Industrial's Motion for Injunctive Relief, ECF No. 2, is **GRANTED IN PART AND DENIED IN PART.** As explained in this Preliminary Injunction Order, GMS Inudstrial's Motion to Expedite Discovery, ECF No. 7, and Motion to Seal Exhibit Containing Trade Secrets, ECF No. 48, are both **DENIED AS MOOT.** The Defendants are **ORDERED** to comply with the directions of the court, as set forth in this Preliminary Injunction Order. GMS Industrial is **ORDERED** to obtain an approved corporate surety bond within fourteen (14) days of the entry of this Preliminary Injunction Order and to comply with the directions of the court, as set forth in this Preliminary Injunction Order.

The Clerk is **DIRECTED** to send a copy of this Preliminary Injunction Order to counsel for all parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
United States District Judge

REBECCA BEACH SMITH
UNITED STATES DISTRICT JUDGE

August 30, 2019