UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

GMS INDUSTRIAL SUPPLY, INC.

   Plaintiff,

v.            CIVIL NO. 2:19cv324

G&S SUPPLY, LLC, et al.,

   Defendants.

### MEMORANDUM OPINION AND ORDER

This matter comes before the court on the Defendants' Motion to Dismiss ("Motion") and Memorandum in Support, filed on August 8, 2019. ECF Nos. 60, 61. Plaintiff GMS Industrial Supply, Inc. ("GMS") filed a Memorandum in Opposition on August 20, 2019. ECF No. 67. The Defendants filed a Reply on August 26, 2019. ECF No. 69. The Defendants requested a hearing on the Motion. ECF No. 71.

### I. Procedural History

On June 20, 2019, Plaintiff filed a thirteen-count Complaint against ten (10) Defendants. ECF No. 1. Defendant Wayne Side filed a Motion to Dismiss for lack of personal jurisdiction on August 6, 2019. ECF No. 58. The court granted that Motion on January 16, 2020. ECF No. 98. Accordingly, Wayne Side was dismissed from this suit.[1] Id.

---

[1] Because Wayne Side is no longer a party, the court does not address arguments regarding him in the instant Motion to Dismiss.

The Defendants filed the instant Motion to Dismiss on August 6, 2019. ECF No. 60. The Motion to Dismiss seeks to dismiss Counts II, III, VIII, IX, X, and XI of the Complaint, and all claims against Sky Spires, for failure to state a claim. ECF No. 60 at 1.

On September 12, 2019, this court referred the Motion to United States Magistrate Judge Robert J. Krask, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), to conduct hearings, including evidentiary hearings, if necessary, and to submit to the undersigned district judge proposed findings of fact, if applicable, and recommendations for the disposition of the Motion. ECF No. 73.

The Magistrate Judge filed the Report and Recommendation ("R&R") on December 18, 2019. ECF No. 93. By copy of the R&R, the parties were advised of their right to file written objections to the findings and recommendations made by the Magistrate Judge. See id. at 55. The parties each filed Objections to the R&R, ECF Nos. 96, 97, and Responses to the Objections, ECF Nos. 100, 101.

## II. Legal Standard

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court, having reviewed the record in its entirety, shall make a de novo determination of those portions of the R&R to which a party has objected. Fed. R. Civ. P. 72(b)(3). The court may accept, reject, or modify, in whole or in part, the

2

recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1). The court is not required to hold a hearing on the Motion. See Fed. R. Civ. P. 78(b); E.D. Va. Civ. R. 7(J).

### III. Discussion

### A. Plaintiff's Objections

GMS makes six objections to the R&R. Pl.'s Objs. at 2. The court addresses each in turn.

### a. Employee non-solicitation clause in Westly's 2019 agreement (Count II)

First, GMS objects to the R&R's conclusion that the employee non-solicitation clause in Westly's[2] 2019 agreement with GMS is unenforceable. Id. at 2-6; see R&R at 17-19. The court agrees with GMS's objection.

The provision in Westly's 2019 agreement provides in relevant part as follows:

Non-Solicitation. During the term of this Agreement, and for a period of one year thereafter, Agent
[1] may not . . . entice, solicit or encourage any Company employee to leave the employ of the Company or any independent contractor to sever its engagement with the Company; and
[2] may not . . . directly or indirectly, entice, solicit or encourage any client or customer or known prospective client or customer of the Company to cease doing business with the Company, reduce its relationship with the Company or refrain from establishing or expanding a relationship with the Company.

---

[2] For the sake of clarification, like the R&R and the Complaint, this Memorandum Opinion and Order refers to Westly Greer and Sabrina Greer by their first names. See R&R at 4 n.2.

3

[3] Agent will not reveal the identity of any supplier
to any competitor of Company.

ECF No. 3-1 at 6, ¶ 14 (bracketed numbers added). In sum, this provision prohibits Westly from (1) soliciting employees or independent contractors to leave or sever their relationship with the company ("employee non-solicitation clause"); (2) soliciting customers to stop doing business with GMS ("customer non-solicitation clause"); and (3) revealing the identity of any supplier to GMS's competitors ("supplier non-disclosure clause").

The R&R correctly held that the customer non-solicitation clause and supplier non-disclosure clause are unenforceable. See R&R at 10-17. The R&R then held that the employee non-solicitation clause is unenforceable because it is in the same paragraph as the unenforceable clauses, and under Virginia law a court may not "blue pencil" a contract. R&R at 17-18.

Under the "blue pencil rule," courts can "modify an otherwise unenforceable restrictive covenant to make its restriction reasonable." Lasership Inc. v. Watson, 79 Va. Cir. 205, 2009 WL 7388870 at *9 (2009). Virginia, however, does not follow the blue pencil rule, meaning courts applying Virginia law refuse to modify restrictive covenants to make them enforceable. See id. (collecting cases). Virginia courts do sever unenforceable provisions if the contract contains an enforceable severability clause, and Virginia courts "recognize[] the difference between

4

severing a clause . . . and rewriting or 'blue penciling' a contract." Pitchford v. Oakwood Mobile Homes, Inc., 124 F. Supp. 2d 958, 965 (W.D. Va. 2000). "The difference between 'blue penciling' and severing is a matter of focus. The former emphasizes deleting, and in some jurisdictions adding words in a particular clause. The latter emphasizes construing independent clauses independently." Id. at 966 (citation omitted). The Fourth Circuit has described the test under Virginia law as follows: "[W]hen a contract covers several subjects, some of whose provisions are valid and some void, those which are valid will be upheld if they are not so interwoven with those illegal as to make divisibility impossible." Alston Studios, Inc. v. Lloyd V. Gress & Assocs., 492 F.2d 279, 285 (4th Cir. 1974).

The court agrees with GMS that the employee non-solicitation clause is enforceable here. Specifically, in this GMS contract, the employee non-solicitation clause is divisible from the customer non-solicitation clause and the supplier non-disclosure clause, because they are separate clauses that impose distinct duties on Westly. Thus, they can be construed independently. See Alston Studios, Inc., 492 F.2d at 285. Blue penciling requires a court to "redraft . . . the covenant into an enforceable one." Job v. Simply Wireless, Inc., 160 F. Supp. 3d 891, 898 (E.D. Va. 2015) (Ellis, J.). Examples of blue penciling a clause include "limit[ing] . . . its application concerning its geographical area,

its period of enforceability, [or] its scope of activity." W. Indus.-N., LLC v. Lessard, No. 1:12CV177 JCC/TRJ, 2012 WL 966028 at *3 (E.D. Va. Mar. 21, 2012) (Cacheris, J.) (citations omitted). None of that is required here. Thus, enforcing the employee non-solicitation clause does not violate Virginia's prohibition on blue penciling.

The Defendants' arguments to the contrary are unavailing. They focus on the fact that the clauses are not "divided into separate subparagraphs" and are "linked together with the conjunctive 'and.'" Defs.' Resp. at 5. The relevant inquiry, however, is not whether the clauses are grammatically linked together, but whether the clauses are "so interwoven with those illegal as to make divisibility impossible." Alston Studios, Inc. 492 F.2d at 285. As discussed above, the clauses are divisible because they each impose unique requirements on Westly. Their placement in the same paragraph does not alter that conclusion. In Roto-Die Co. v. Lesser, 899 F. Supp. 1515 (W.D. Va. 1995), for example, the court held that certain non-compete clauses in a paragraph were unenforceable, but severed and enforced other clauses in the same paragraph that "address[ed] different concerns." Id. at 1522.

Finally, Westly's 2019 agreement contains a severability provision. It provides that "[i]f any part or parts of this Agreement shall be held unenforceable for any reason, the remainder

of this Agreement shall continue in full force and effect." ECF No. 3-1 at 7, ¶ 16. Severability clauses are enforceable under Virginia law. See Pitchford, 124 F. Supp. 2d at 965. Accordingly, because enforcing the employee non-solicitation clause does not require the court to rewrite the contract, and because the parties agreed that the remainder of the contract would continue in force even if some clauses are held unenforceable, the employee non-solicitation clause is enforceable. GMS's objection is **SUSTAINED**.

### b. Employee handbook provision in Westly's 2012 agreement (Count II)

GMS objects to the R&R's conclusion that Count II fails to state a claim against Westly for breach of GMS's employee handbook. Pl.'s Objs. at 6-10; see R&R at 25-28. This objection lacks merit.

The relevant provision in Westly's 2012 agreement provides as follows:

[I] have received the GMS Industrial Supply employee handbook, and agree to comply with its provisions and any other rules. Neither the handbook, practices, nor any communications create an employment contract or term.

ECF No. 3-1 at 2, § 2. The R&R held that this provision is ambiguous, and therefore must be construed against GMS because GMS drafted the agreement. R&R at 25-28. GMS argues that this provision is not ambiguous, and contractually requires Westly to comply with the terms of GMS's employee handbook. Pl.'s Objs. at 6-8. The

7

correct interpretation of this provision, GMS argues, is that Westly was required to comply with the GMS employee handbook, but "at the same time acknowledg[es] that the provisions of the Employee Handbook standing alone do not create a contract." Pl.'s Objs. at 7-8.

GMS's interpretation is one possible interpretation. But it is certainly not the only one. As the R&R concluded, an equally possible interpretation is that, as the provision itself states, "nothing in the employee handbook gives rise to any employment contract or any contract terms, running to or from either party." R&R at 28. GMS asks "[w]hy would any employer do that?" Pl.'s Objs. at 8. As the Defendants point out, the 2012 agreement was an at-will agreement, and it is reasonable to think that an employer would not want to change the at-will nature of the contract by adding terms. Defs.' Resp. at 6. Cf. Michael v. Sentara Health Sys., 939 F. Supp. 1220, 1236 (E.D. Va. 1996) (Smith, J.) (holding that employee handbook did not alter employees' at-will status).

In any event, the contract "may be understood in more than one way," and is consequently ambiguous. Bartolomucci v. Fed. Ins. Co., 289 Va. 361, 370 (2015) (citation omitted). Because it is ambiguous, it must be construed against its drafter, GMS. See Martin & Martin, Inc. v. Bradley Enterprises, Inc., 256 Va. 288, 291 (1998). Count II, therefore, fails to state a claim for breach

8

of the employee handbook. Accordingly, GMS's objection is **OVERRULED**.

### c. Employee non-solicitation provisions in other agreements (Count III)

GMS objects to the R&R's conclusion that the employee non-solicitation provision in the agreements between GMS and Defendants Gregory Spires/County Roads LLC,[3] Sabrina/Greer Group LLC,[4] Michael Welton (2016 agreement), Thomas Hayes, and Sky Spires are unenforceable. Pl.'s Objs. at 11; see R&R at 29-30. The non-solicitation provisions in these agreements are identical to the non-solicitation provision in Westly's 2019 agreement. See supra Part III.A.a. GMS objects to the R&R's finding "for the same reasons it did in discussing Westly's agreement." Pl.'s Objs. at 11. The court holds that the employee non-solicitation clause in these agreements is enforceable for the same reasons that it is enforceable in Westly's 2019 agreement. See supra Part III.A.a. The objection is **SUSTAINED**.

### d. Non-solicitation provision in Welton's 2019 agreement (Count III)

GMS objects to the R&R's holding that the entire non-solicitation provision of Welton's 2019 agreement is

---

[3] Defendant Greg Spires and his company, Defendant County Roads LLC, are parties to the agreement with GMS. See ECF No. 3-1 at 12.

[4] Defendant Sabrina and her company, Defendant Greer Group LLC, are parties to the agreement with GMS. See ECF No. 3-1 at 16.

unenforceable. Pl.'s Objs. at 11-15; see R&R at 30-31. The court

agrees in part with GMS's objection.

The non-solicitation provision is as follows:

Non-Solicitation. During the term of this Agreement, and
for a period of one year thereafter, Statutory Employee
may not
[1] [E]ntice, solicit or encourage any Company employee
to leave the employ of the Company to work for a business
competitive with the business of the Company or for a
business owned, managed by or at which Statutory
Employee works;
[2] [E]ntice, solicit or encourage any independent
contractor with whom Statutory Employee had contact with
during the Term (as defined below) or learned of during
the Term by virtue of Statutory Employee's employment
with Company, to sever its engagement with the Company;
and
[3] [D]irectly or indirectly, entice, solicit or
encourage any client or customer with whom Statutory
Employee had contact or became aware of as a result of
Statutory Employee's work with the Company or any known
(during the Term) prospective client or customer of the
Company to cease doing business with the Company, reduce
its relationship with the Company or refrain from
establishing or expanding a relationship with the
Company.
[4] Statutory Employee will not reveal the identity of
any supplier to any competitor of Company.

ECF No. 3-1 at 28, ¶ 13 (bracketed numbers added). In sum, the

four clauses prohibit Welton from (1) soliciting employees to leave

GMS ("employee non-solicitation clause"); (2) soliciting an

independent contractor to "sever its engagement" with GMS

("contractor non-solicitation clause"); (3) soliciting any client

or customer to cease or decrease its business with GMS ("customer

non-solicitation clause."); and (4) disclosing the identity of any of GMS's suppliers ("supplier non-disclosure clause").[5]

First, GMS argues that the customer non-solicitation clause is enforceable. Virginia courts analyze non-solicitation clauses under a three-part test, which "requires that the employer show that the clause (i) is narrowly drawn to protect the employer's legitimate business interest; (ii) is not unduly burdensome on the employee's ability to earn a living; and (iii) is not against sound public policy." Update, Inc. v. Samilow, 311 F. Supp. 3d 784, 788 (E.D. Va. 2018) (Ellis, J.) (quoting Lanmark Tech., Inc. v. Canales, 454 F. Supp. 2d 524, 528 (E.D. Va. 2006) (Ellis, J.)).

As the R&R held, the customer non-solicitation clause is unenforceable because it is unduly burdensome and overly broad. R&R at 31. The clause forbids Welton from soliciting "any client or customer" with whom Welton interacted or became aware of during his time at GMS, or any "known . . . prospective client or customer." ECF No. 3-1 at 28, ¶ 13. The contract does not define how Welton is to determine whether a customer was a "prospective" customer. Requiring Welton to remember each customer he became aware of during his time at GMS, as well as any "prospective" customer, imposes an unreasonable burden on Welton. See Lasership Inc., 2009 WL 7388870 at *8 (striking down as burdensome a clause

_____

[5] GMS did not object to the R&R's holding that the supplier non-disclosure provision is unenforceable. R&R at 31.

11

that prohibited employee from contacting any customer "invoiced in the year before the employee left" the company).

Furthermore, the customer non-solicitation clause is unenforceable because it is overbroad. The final portion of the clause prohibits Welton from soliciting a customer or prospective customer to "refrain from establishing or expanding a relationship with the Company." ECF No. 3-1 at 28, ¶ 13. As the R&R explains, this clause can be interpreted to prohibit Welton from soliciting a company to purchase goods that do not even compete with GMS's products. See R&R at 14. For example, if Welton sold a product to a GMS client that GMS does not currently offer, that could cause the client to not "expand" its relationship with GMS should GMS later offer that product. See id. This clause also likely applies to companies with whom GMS does not even do business, as it also applies to prior "prospective" GMS clients. In light of these possible interpretations, the clause is not narrowly tailored to protect GMS's legitimate business interests and is unduly burdensome on Welton's ability to earn a living. See, e.g., Nortec Commc'ns, Inc. v. Lee-Llacer, 548 F. Supp. 2d 226, 231 (E.D. Va. 2008) (Lee, J.) (holding non-solicitation clause unenforceable because it was "overly broad and ambiguous").

GMS's counter-arguments are unpersuasive. GMS argues that "[i]t would seem axiomatic . . . that 'establishing or expanding' a relationship with a company would be interpreted as a customer

deciding to do business with or increase the amount of business done with the company." Pl.'s Objs. at 14. This interpretation, however, renders the clause overbroad. If Welton sells a non-competing product that causes a GMS customer not to do business with GMS in the future, that would seemingly violate this interpretation of the clause. Furthermore, even if there were a way to narrow the clause, "where a non-compete clause is ambiguous, susceptible to two or more differing interpretations, one of which is overbroad and unenforceable, the entire clause fails even though it may be reasonable as applied to the specific circumstances." Lanmark Tech., Inc., 454 F. Supp. 2d at 529 (footnote omitted).

Next, GMS argues that even if the customer non-solicitation clause is unenforceable, the contractor non-solicitation and employee non-solicitation clauses are enforceable because they are severable. The R&R held that these clauses are not enforceable because the customer non-solicitation clause and supplier non-disclosure clause are unenforceable. R&R at 31.

The court agrees with GMS that the provisions are severable, for the reasons discussed above. See supra III.A.a. Like the provision in Westly's agreement, these separate clauses impose distinct duties on Welton and enforcing them would not impermissibly blue pencil the contract. See id. Welton's 2019 agreement contains a severability provision. ECF No. 3-1 at 29, ¶ 15. Accordingly, the contractor non-solicitation clause and

13

employee non-solicitation clauses are enforceable. GMS's objection
is **OVERRULED IN PART** and **SUSTAINED IN PART**.

### e. Breach of "best efforts" provision (Count III)

GMS objects to the R&R's holding that Count III does not state
a claim for failure to use best efforts to sell GMS's products.
Pl.'s Objs. at 15-18; see R&R at 33-34. Count III alleges that all
Defendants, except Westly and G&S Supply, LLC ("G&S Supply"),
breached their agreements with GMS. Compl. ¶¶ 109-112. In its
Opposition to the Defendants' Motion to Dismiss, GMS argues that
these Defendants breached their agreements by "violating their
contractual duty to exercise their best efforts to sell GMS's
goods." Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss at 13, ECF
No. 67. The R&R concluded that "the complaint nowhere alleges in
count III, or in the paragraphs incorporated therein, that they
violated such an obligation." R&R at 33.

In its Objections, GMS claims that it pleaded such a claim
because "the employment contracts" are cited in the Complaint and
should therefore be considered. Pl.'s Objs. at 15-16. If the
employment contracts are considered, GMS argues, "it is clear that
there was a duty under the contracts for the Defendants to use
their best efforts." Id. at 16.

GMS's objection lacks merit. First, with the exception of
Welton's 2019 agreement, none of the Defendants' agreements
contains any provision requiring them to use "best efforts" to

sell GMS's products. The agreements do contain a provision in which they are required to "aggressively promote the sale of Products." See, e.g., ECF No. 3-1 at 12, ¶ 1 (Greg Spires agreement). GMS cites no authority, however, indicating that "aggressively promote" is synonymous with a "best efforts" provision. Therefore, even if the contracts are considered, Count III in the Complaint does not state a claim for breach of a "best efforts" provision in the relevant agreements. Nor does the Complaint anywhere state a claim for violation of the "aggressively promote" provisions in the contracts.

Welton's 2019 agreement provides that Welton "shall use its [*sic*] best efforts to provide direct personal support and contact to all Company customers." ECF No. 3-1 at 25, ¶ 1(b). The agreement does not state, however, that Welton must use his "best efforts" to sell GMS's products. Accordingly, Count III does not state a claim against Welton for failure to use "best efforts" to sell GMS's products. GMS's objection is **OVERRULED**.

### f. Tortious interference with contract or business expectancy (Count IX)

Finally, GMS objects to the R&R's holding that Count IX fails to state a claim for tortious interference with contract or business expectancy. Pl.'s Objs. at 18-22; see R&R at 40-45. GMS argues that the R&R applied too stringent of a standard to plead

15

a claim for tortious interference with contract or business expectancy. The court disagrees.

The first element of a tortious interference claim is showing "the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff."[6] Am. Chiropractic v. Trigon Healthcare, 367 F.3d 212, 228 (4th Cir. 2004) (citation omitted). The Complaint alleges that the Defendants used improper means to gain an advantage in the bidding process for government contracts, thereby enabling them to divert sales from GMS. See Compl. ¶¶ 164-170. In particular, the Complaint alleges that "65% to 90% of the customer requests" to GMS are for "cage code part number" ("CCPN") items and that G&S "is unlawfully competing with GMS in selling CCPN items, specifically to the U.S Army at various Army bases." Compl. ¶ 24.[7]

---

[6] The elements of a tortious interference claim are: "(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) the defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damages to plaintiff." Am. Chiropractic v. Trigon Healthcare, 367 F.3d 212, 228 (4th Cir. 2004) (citation omitted).

[7] The Complaint also alleges that GMS has a competitive advantage because it has been awarded national stock numbers ("NSNs"). Compl. ¶ 24. As the R&R notes, the Complaint alleges that G&S has not yet obtained any NSNs. Compl. ¶ 24. Therefore, the court agrees with the R&R that GMS cannot state a claim for interference with the sale of NSN products. R&R at 43.

The Complaint fails, however, to plead any specific facts regarding ongoing contracts or business relationships with which G&S has interfered by selling CCPN items. GMS's prior sales do not demonstrate ongoing contracts or a business relationship, because a military solicitation "is a request for offers" and "not a contract." Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC, 845 F. Supp. 2d 1241, 1259 (M.D. Fla. 2012), aff'd in part, 505 F. App'x 928 (11th Cir. 2013). See id. ("[The] testimony evinces only the fact that Plaintiff had, in the past, sold goods to the U.S. military. Such testimony does not demonstrate an agreement to purchase goods in the future.").

GMS objects on the basis that the R&R "has improperly created a new standard for a party to plead tortious interference with a contract expectancy." Pl.'s Objs. at 18. This objection is misplaced. To adequately state a claim, a plaintiff must plead "more than labels and conclusions . . . [the] factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Here, however, it does not follow that because G&S Supply has sold products to the military, it has thereby interfered in an unspecified business expectancy or unidentified contract that GMS has with the military. This is especially the case in this market, because "[w]hile a plaintiff already bears a relatively high burden to show that it possesses an objective and probable business

expectancy, its bears an even greater burden in the context of a government-sponsored bid solicitation conducted under full and open competition." Patriot Contract Servs., LLC v. Am. Overseas Marine Corp., No. 4:06cv36, 2006 U.S. Dist. LEXIS 98575 at *41 (E.D. Va. Oct. 13, 2006) (Doumar, J.); see also, e.g., Peterbilt of Bristol, Inc. v. Mac Trailers, Mfg., No. 1:09cv58, 2009 WL 4063663 at *3 (W.D. Va. Nov. 23, 2009) ("The mere possibility of a future business relationship is not enough to satisfy the tort's first and third elements.").

GMS relies on Buffalo Wing Factory, Inc. v. Mohd, 622 F. Supp. 2d 325 (E.D. Va. 2007) (Cacheris, J.), but the facts of that case are distinguishable. In Buffalo Wing Factory, Inc., the plaintiff "sufficiently pled facts alleging that at least some portion of Plaintiff's loyal and repeat customer base has been lured away by Defendants' conduct." Id. at 337. GMS alleges that the Defendants have siphoned away its business, but has not pleaded any facts in support of that claim. Moreover, Buffalo Wing Factory, Inc. involved restaurants competing for customers in a small geographic area, see id. at 329, not the sale of products to the United States military in a competitive bidding process. GMS's objection is **OVERRULED**.

## B. Defendants' Objections

The Defendants make five (5) objections to the R&R. Each objection lacks merit.

### a. Confidentiality provisions in some agreements (Counts II and III)

The Defendants object to the R&R's conclusion that the confidentiality provisions in the contracts for Greg Spires/County Roads LLC, Sabrina/Greer Group LLC, Hayes, Sky Spires, Welton (2016 agreement), and Westly (2019 agreement) are enforceable. Defs.' Objs. at 4; see R&R at 7-10, 29-30. The confidentiality provisions in all of these agreements are the same. They provide, in relevant part, as follows:

> [A]gent will not during the term of this Agreement, or any time thereafter, use, disclose or permit to be known by any other person or entity, any Confidential Information of the Company . . . The term "Confidential Information" means information relating to the Company's business affairs, proprietary technology, trade secrets, patented processes, research and development data, know-how, market studies and forecasts, competitive analyses, pricing policies, employee lists, employment agreements . . . personnel policies, the substance of agreements with customers, suppliers and others, marketing arrangements, customer lists, commercial arrangements, or any other information relating to the Company's business that is not generally known to the public or to actual or potential competitors of the Company . . . This obligation shall continue until such Confidential Information becomes publicly available . . . .

See, e.g., ECF No. 3-1 at 5-6, ¶ 12 (Westly 2019 agreement).

The test for whether a confidentiality provision is enforceable involves the same balancing test applied to non-compete and non-solicitation agreements. The provision is enforceable only if it "1) is narrowly drawn to protect the employer's legitimate business interest; 2) is not unduly harsh and oppressive in curtailing the employee's ability to earn a living; and 3) is not against sound public policy." Lasership Inc., 2009 WL 7388870 at *4.

The R&R correctly held that the confidentiality provision in these agreements meets this test, R&R at 7-10, 29-30, and the Defendants' objections to that holding are unpersuasive. The Defendants object to the provision on the basis that it is indefinite. Defs.' Objs. at 4. However, courts applying Virginia law have upheld perpetual confidentiality provisions. E.g., Brainware, Inc. v. Mahan, 808 F. Supp. 2d 820, 829 (E.D. Va. 2011) (Brinkema, J.); see also Omnisec Int'l Investigations, Inc. v. Stone, 101 Va. Cir. 376, 2019 WL 3892839 at *6 (2019) ("[I]t is appropriate for an employer to restrict a former employee's ability to use confidential information in perpetuity since that is a legitimate business interest of an employer which, in and of itself, is not unduly burdensome on the employee's ability to earn a living.").

The Defendants also object that the confidentiality provision is overbroad. Defs.' Objs. at 5-7. The definition of "Confidential

Information," however, sufficiently limits the provision. In Brainware, Inc., for example, the court upheld a confidentiality provision that, like here, was "narrowly limited to actual confidential information." 808 F. Supp. 2d at 828; see also Omnisec, Int'l Investigations, Inc., 2019 WL 3892839 at *5 ("[T]he non-disclosable information here is limited to 'confidential and/or propriety information,' which does not suffer from the overbreadth from which the phrase 'any information' suffers."). The facts here are dissimilar from Lasership Inc., upon which the Defendants rely, in which the court held a confidentiality provision was unenforceable where it prohibited the employee from ever divulging any information about the company. 2009 WL 7388870 at *1, *8.

The Defendants also rely heavily on Integrated Direct Marketing, LLC v. May, 129 F. Supp. 3d 336 (E.D. Va. 2015) (Brinkema, J.), aff'd, 690 F. App'x 822 (4th Cir. 2017). While the facts in Integrated Direct Marketing, LLC are similar, the court concludes that the case does not compel a different result. First, the relevant portion of Integrated Direct Marketing, LLC only summarizes a prior bench ruling on a motion for summary judgment. Id. at 341. Second, the confidentiality clause in Integrated Direct Marketing, LLC was broader than the clause here. The clause in that case prohibited the employee from ever disclosing "any and all information furnished by" the employer that was not publicly

known. Id. Here, in contrast, the confidentiality provision applies to specific kinds of information and non-public information "relating to [GMS's] business," not all information that GMS ever provided to the employees.

Finally, the Defendants unpersuasively argue that the confidentiality provision unduly restricts their ability to earn a living. Defs.' Objs. at 6. Because the provision only covers non-public information regarding GMS's business, there is no evidence that this provision would prevent the Defendants from disclosing information they learned prior to their employment at GMS. Furthermore, the Defendants do not offer any reason why they would need to disclose information about GMS's business that is not publicly available to a future employer. See Pl.'s Resp. at 6-7. The facts presented here are therefore different than Darton Environmental, Inc. v. FJUVO Collections, LLC, 332 F. Supp. 3d 1022 (W.D. Va. 2018), which the Defendants cite in support, because in that case the confidentiality provision "would prohibit the disclosure of much of [the defendant's] own pre-existing business." Id. at 1031.

Second, the Defendants object to the R&R's holding that the confidentiality provision in Welton's 2019 agreement is enforceable. Defs.' Objs. at 8-9; see R&R at 30-31. This argument is unconvincing. The confidentiality provision in Welton's 2019 agreement is different than the confidentiality provision in the

other Defendants' agreements in two important respects. ECF No. 3-1 at 27-28, ¶ 11. First, it extends for only three (3) years. Id. Second, it defines "Confidential Information" more narrowly, so that the definition only encompasses information "that is used or employed by the Company in the actual performance of its business operations." Id. Given the broader version of this confidentiality clause is enforceable, this narrowed clause is also enforceable.

The Defendants also argue that the Complaint fails to state a claim for breach of the confidentiality provision in Welton's 2019 agreement. Defs.' Objs. at 8-9; see R&R at 34 n. 18 (concluding Complaint does state a claim for violation of the provision). The court agrees with the R&R that the Complaint does state a claim for violation of this provision. See, e.g. Compl. ¶¶ 75-80 (alleging Welton violated terms of his 2016 and 2019 agreements, including confidentiality provision in 2019 agreement). The Defendants' objection is **OVERRULED**.

## b. Supplier non-disclosure provision in Westly's 2012 agreement (Count II)

The Defendants object to the R&R's conclusion that the Complaint states a claim for breach of the supplier non-disclosure provision in Westly's 2012 agreement. Defs.' Objs. at 9; see R&R at 24. The supplier non-disclosure provision forbids Westly from revealing "the identity of any supplier to any competitor of GMS

Industrial" while employed at GMS and for twelve (12) months after
his employment ended. ECF No. 3-1 at 2.

The Complaint plausibly alleges that Westly revealed the
identity of GMS's suppliers, as it alleges that Westly
misappropriated GMS's confidential information regarding GMS's
suppliers, including a "Products Source List," in order to compete
with GMS. See Compl. ¶¶ 26-28, 31-32, 51, 104-08. These allegations
are sufficient to "state a claim to relief that is plausible on
its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).
The Defendants' objection is **OVERRULED**.

### c. Violation of the Virginia Computer Crimes Act (Count VIII)

The Defendants object to the R&R's conclusion that Count VIII
of the Complaint states a claim against Sabrina/Greer Group LLC,
Hayes, Greg Spires/County Roads LLC, Welton, and Sky Spires, for
violation of the Virginia Computer Crimes Act ("VCCA"), Va. Code
Ann. § 18.2-152.3. Defs.' Objs. at 10-11; see R&R at 34-37.

To state a claim under the VCCA, a plaintiff must allege that
a defendant "(1) uses a computer or computer network; (2) without
authority; and (3) either obtains property or services by false
pretenses, embezzles or commits larceny; or converts the property
of another." State Analysis, Inc. v. Am. Fin. Servs. Assoc., 621
F. Supp. 2d 309, 319 (E.D. Va. 2009) (Brinkema, J.) (citing Va.
Code § 18.2-152.3). Here, GMS has plausibly alleged these elements.
GMS alleges that Sabrina, Hayes, Greg Spires, Welton, and Sky

Spires, along with Westly, unlawfully joined together to set up a company that would compete with GMS. Compl. ¶¶ 32, 67, 74, 81. The Complaint alleges that G&S did in fact unlawfully compete with GMS. Compl. ¶¶ 32-34. Furthermore, the Complaint alleges that the Defendants used, without authority to do so, GMS's computers and network to achieve these allegedly unlawful ends. Id. ¶¶ 158-159. Based on the allegations in the Complaint, it is reasonable to infer that the Defendants had access to GMS's computer network, as the Complaint alleges that the Defendants communicated extensively with GMS's Virginia Beach headquarters and gained knowledge of GMS's customers and trade secrets. See Compl. ¶¶ 28, 32. Assuming these facts to be true, GMS has stated a claim against these Defendants under the VCCA.

The Defendants argue that the Complaint does not plead that the Defendants acted "without authority" or were "not authorized to use" GMS's computers and network. Defs.' Objs. at 10. A plaintiff can state a claim under the VCCA, however, even when the defendant was authorized to access a computer network. That is because "the VCCA's definition of use of a computer network without authority applies when a person acts in a manner knowingly exceeding [their] right, agreement, or permission." Space Sys./Loral, LLC v. Orbital ATK, Inc., 306 F. Supp. 3d 845, 855-56 (E.D. Va. 2018) (Jackson, J.). Here, it is reasonable to infer that the Defendants were not authorized to use GMS's computers and

network to surreptitiously obtain confidential information that they would later use to harm GMS. Accordingly, GMS has stated a claim against these Defendants for violation of the VCCA. See id. (denying motion to dismiss VCCA claim where plaintiff alleged that defendant "intentionally used [third party's] server without authorization or exceeding authorized access to obtain its proprietary information and trade secrets for unauthorized purposes."). This objection is **OVERRULED.**

### d. Conspiracy claims (Counts X and XI)

The Defendants object to the R&R's conclusion that Count X and XI in the Complaint state a claim for conspiracy against Westly, Sabrina, Greg Spires, Hayes, Sky Spires, and Welton. Defs.' Objs. at 11-13; see R&R at 45-52. The court agrees with the R&R that the Complaint states a claim for conspiracy against these Defendants.

The elements of business conspiracy, pleaded in Count X of the Complaint, are: (1) a combination of two or more persons; (2) who cooperate for the purpose of willfully and maliciously injuring plaintiff in his business; and (3) resulting damage to plaintiff. Va. Code Ann. § 18.2-499; Allen Realty Corp. v. Holbert, 227 Va. 441, 449 (1984). The elements of common law conspiracy, pleaded in Count XI of the Complaint, are similar:(1) an agreement between two or more persons; (2) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means; with (3) resulting

damage to plaintiff. William v. AES Corp., 28 F. Supp. 3d 553, 574 (E.D. Va. 2014) (Cacheris, J.). Each type of conspiracy is subject to a heightened pleading requirement. See Gov't Employees Ins. Co. v. Google, Inc., 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) (Brinkema, J.) (business conspiracy); William v. AES Corp., 28 F. Supp. 3d 553, 574 (E.D. Va. 2014) (Cacheris, J.) (common law conspiracy).

Here, GMS has adequately pleaded both types of conspiracy as to these Defendants. The gravamen of the Complaint is that Westly and Greg Spires, using GMS's confidential information, devised and implemented a plan to surreptitiously set up a competitor to GMS, and then recruited GMS's sales agents to join the scheme. See, e.g., Compl. ¶¶ 32, 53, 46-49, 137, 174. The Complaint further alleges that the Defendants solicited GMS's customers, id. ¶ 53, and that the Defendants sold products through G&S Supply while remaining sales agents at GMS, id. ¶ 46. Taken together, these allegations sufficiently state a claim for Business Conspiracy and Common Law Conspiracy.

The Defendants' argument in response is unpersuasive. The Defendants argue that the Complaint's allegations "are only indicative of parallel conduct," Defs.' Resp. at 12, and "[w]ithout more, parallel conduct does not suggest conspiracy." Defs.' Resp. at 11 (citations omitted). The Defendants take this argument from the Supreme Court's decision in Bell Atlantic Corp. v. Twombly,

550 U.S. 544 (2007). In Twombly, the Supreme Court held that allegations of parallel conduct did not suggest an antitrust conspiracy because, in the antitrust context, parallel conduct is "consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy." Twombly, 550 U.S. at 554. This is not an antitrust case. The Complaint does not in any way suggest that the Defendants worked individually to harm GMS or that there was "parallel conduct"; the premise of the Complaint is that they did so together. Accordingly, this objection is **OVERRULED**.

### e. Claims against Sky Spires

The Defendants' final objection is that all claims against Sky Spires should be dismissed. Defs.' Objs. at 13-16; see R&R at 52-53. The crux of the Defendants' objection is that the Complaint lacks sufficient details regarding Sky Spires's involvement in the conspiracy to state claims against him, including the fact that GMS does not plead a specific amount of lost profits attributable to him. Defs.' Objs. at 13-16. The court disagrees. The Complaint alleges that Sky Spires, while also employed by GMS, worked together with Westly and others to unlawfully compete with GMS while misusing GMS's confidential information. See, e.g., Compl. ¶¶ 32, 59, 92-96, 137. The Complaint also alleges that Sky Spires was terminated for cause. Id. ¶ 95. These allegations are

sufficient to state claims against Sky Spires as pleaded in the Complaint.

Moreover, GMS is not required, at this juncture, to attribute a specific amount of lost profits to Sky Spires. It is enough that the Complaint alleges upon information and belief that Sky Spires caused GMS lost profits, and alleges that the amount of lost profits is a subset of the losses attributable to Greg Spires, his father. Compl. ¶ 96; see Ridenour v. Multi-Color Corp., 147 F. Supp. 3d 452, 456 (E.D. Va. 2015) (Davis, J.) ("A plaintiff is generally permitted to plead facts based on 'information and belief' if such plaintiff is in a position of uncertainty because the necessary evidence is controlled by the defendant."). This objection is **OVERRULED**.

## IV. Conclusion

The court, having reviewed the record in its entirety and having examined the Objections and made de novo findings with respect thereto, does **GRANT IN PART** and **DENY IN PART** the Defendants' Motion to Dismiss, ECF No. 60, such that:

- With respect to Westly's 2019 agreement, Count II states a claim for breach of the confidentiality provision and employee non-solicitation clause, but fails to state a claim for breach of the customer non-solicitation clause and supplier non-disclosure clause.

29

- With respect to Westly's 2012 agreement, Count II states a claim for breach of the supplier non-disclosure clause, but fails to state a claim for breach of the confidentiality provision, employee recruitment restriction, and any provision of the employee handbook.

- With respect to Welton's 2016 agreement and the agreements for Gregory Spires/County Roads LLC, Sabrina/Greer Group LLC, Hayes, and Sky Spires, Count III states a claim for breach of the confidentiality provision and employee non-solicitation clause, but fails to state a claim for breach of the customer non-solicitation clause and supplier non-disclosure clause.

- With respect to Welton's 2019 agreement, Count III states a claim for breach of the confidentiality provision, contractor non-solicitation clause, and employee non-solicitation clause, but fails to state a claim for breach of the customer non-solicitation clause and supplier non-disclosure clause.

- Count III fails to state a claim for failure to use "best efforts" to sell and "aggressively promote" the sale of GMS products.

- The claim in Count IX of tortious interference with a contract or business expectancy fails to state a claim for relief against any Defendant at this juncture.

- Counts VIII, X, and XI state a claim for relief.

The Defendants' Request for Hearing, ECF No. 71, is **DENIED** because a hearing is unnecessary to resolve the Motion. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to all parties.

    **IT IS SO ORDERED.**

                                     /s/
                                 Rebecca Beach Smith
                                 Senior United States District Judge

                                 REBECCA BEACH SMITH
                                 SENIOR UNITED STATES DISTRICT JUDGE

February 28, 2020