IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

GMS INDUSTRIAL SUPPLY, INC..          )
      Plaintiff,                               )
            v.                          )          Civil Action No. 2:19-cv-324 (RCY)
                         )
G&S SUPPLY, LLC, *et al.*,            )
      Defendants.                          )
_____)

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's Motion for Sanctions Against Defendants Westly L. Greer and G&S Supply, LLC (ECF No. 195) and Defendants' Motion for Sanctions Pursuant to Rule 11 (ECF No. 193). Both motions have been fully briefed, and the Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant Plaintiff's Motion for Sanctions Against Defendants Westly L. Greer and G&S Supply, LLC, and deny Defendants' Motion for Sanctions Pursuant to Rule 11.

## I. BACKGROUND

GMS Industrial Supply, Inc. ("GMS" or "Plaintiff") is an industrial sales company that sells its products almost exclusively to military customers throughout the United States, Europe, and Asia. (Pl.'s Mem. Supp. Mot. Sanctions at 2, ECF No. 196.)[1] In order to sell its products, GMS utilizes sales agents who operate within specified territories, often military bases, where they contact personnel in areas that need industrial goods. (*Id.* at 2-3.) The sales agents are trained by

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions.

GMS and have regular virtual meetings with management. (*Id.* at 3.)  Nonetheless, GMS sales agents work independently with minimal company oversight.

GMS hired Westly L. Greer ("Greer") as a sales agent in 2011. (*Id.*)  The following year, he was promoted to district manager, so in addition to his continuing sales duties, he was responsible for overseeing sales agents within a certain region. (*Id.*)  In July of 2015, Greer was promoted to Director of Sales which made him the head of the entire sales team. (*Id.*)  As Director of Sales, he was tasked with overseeing the other sales managers and working directly with GMS' marketing department and corporate home office in Virginia. (*Id.*)  Greer's primary responsibility was to communicate frequently with the Virginia office and to disseminate all directives to the sales agents, train new sales agents, and manage all activities for GMS' best interests. (*Id.*)  He was also given almost unfettered access to GMS' confidential, proprietary, and trade secret information. (*Id.*)  The district managers reported directly to Greer, and he was the primary point of contact that sales agents had with GMS. (*Id.* at 4.)

In 2015—unbeknownst to GMS—Greer started a business, HMC Supply, LLC ("HMC"), with another sales agent, Gregory Spires ("Spires"), and two other GMS sales agents. (*Id.*)  In June of 2017, Greer and Spires started a new company, G&S Supply, LLC ("G&S"), through which they sold standard industrial products to GMS customers. (*Id.*; Defs.' Mem. Supp. Mot. Sanctions at 3, ECF No. 194.)  The pair later recruited other GMS sales agents to sell G&S goods to GMS customers. (Pl.'s Mem. Supp. Mot. Sanctions at 5.)  In January of 2019, Greer stepped down as Director of Sales for GMS and became a contract sales agent for the Company. (*Id.*)

On April 1, 2019, GMS discovered the existence of G&S and that Greer and Spires owned G&S. (*Id.*)  That same day, GMS contacted Greer to allegedly discuss G&S, but the parties disagree as to whether any conversations took place. (*Id.*; Defs.' Resp. at 6 n.8, ECF No. 206.)  By

April 2, 2019, GMS was aware of the breadth and depth of G&S and Greer's alleged ongoing conspiracy with other GMS sales agents to compete directly with GMS. (*Id.* at 6.) On the same day, allegedly warned by GMS' sudden demands to speak, Greer connected a USB device to his GMS-issued desktop at 7:39 a.m.[2] (ECF No. 196-9 at 5-6.)  On April 3, 2019, through counsel, GMS sent letters to Greer, Spires, and other sales agents working with G&S terminating their sales agreements with GMS. (Pl.'s Mem. Supp. Mot. Sanctions at 6.)  The letter that Greer received also informed him of his legal obligation to preserve all potentially relevant information and his responsibility to suspend any document destruction policies and automatic deletion functions. (*Id.* at 7.) On April 17, 2019, GMS sent another letter to Greer informing him of GMS' awareness that he continued to breach his contractual agreement and directing Greer to return GMS's property, including a laptop computer, a desktop computer, a computer tablet, and two computer monitors (collectively, "the Computer Equipment"). (*Id.*)  On approximately April 22, 2019, Greer mailed the Computer Equipment back to GMS. (*Id.*)  When GMS employees logged into the desktop and laptop computers, they discovered that all user-created files had been deleted from the desktop. (*Id.*)  When they attempted to use the computer tablet, they could not access it because it was password protected. (*Id.*)  Upon realizing that they could not access the tablet, GMS contacted Greer via email, requesting the password to the computer tablet. (*Id.*)  On May 31, 2019, Greer sent GMS an email stating that the password was a comma. (*Id.* at 8.)  Yet, when GMS attempted to gain access using the protected password, it reportedly did not work. (*Id.*)

---

[2] GMS later hired BDO USA, LLC ("BDO"), a digital forensics and cyber investigations firm, to perform a forensic examination on Greer's GMS-issued electronic devices. BDO issued GMS a Report of the examination findings. (Pl.'s Mem. Supp. Mot. Sanctions at 8.)

GMS sent the Computer Equipment to BDO where BDO performed a forensic examination on the laptop and desktop computers. (*Id.*) The forensic examination found the following:

- Over 43,000 files and folders were deleted from the laptop computer, 7,075 of which were deleted after Greer was terminated and received the litigation hold letter from Haden. Per industry averages, this compares to over 330 bankers' boxes of documents;

- Over 24,000 files and folders were deleted from the desktop computer, 11,791 of which were deleted after Greer was terminated and received the litigation hold letter from Haden. Per industry averages, this compares to over 820 bankers' boxes of documents;

- Beginning in May 2017, seven unique data storage devices had been attached to the laptop computer;

- Beginning in October 2015, seven unique data storage devices had been attached to the desktop computer; and

- On April 19, 2019, after Greer received the second letter from Haden, he attached a data storage device to the desktop computer and accessed documents on the device.

(*Id.* at 8; ECF No. 196-9 at 5-6.) According to BDO, on April 19, 2019, Greer connected a USB storage device to the desktop computer. (*Id.* at 9.) Shortly thereafter, he ran a Google search for the term "fileshredder," visited the File Shredder website, and downloaded and installed the file shredding program. (*Id.*) After the installation, Greer ran the file shredding program, permanently deleted 3,397 files from the computer, and then uninstalled the shredding program.[3] (*Id.*) GMS now seeks to impose sanctions against G&S and Greer (collectively "Defendants") for the alleged spoliation of evidence housed on Greer's laptop, desktop, and tablet.

---

[3] Greer returned three GMS-issued devices, a laptop, a desktop, and a tablet. The forensic analysis that was later performed on the devices discusses the use of File Shredder on the "desktop," accordingly, the Court shall reference the "desktop" when discussing spoliation stemming from the use of File Shredder.

## II. PROCEDURAL HISTORY

Plaintiff filed a Complaint on June 20, 2019 (ECF No. 1) against G&S Supply, LLC, Westly L. Greer, Sabrina Greer, Greer Group, LLC, Gregory K. Spires, County Roads, LLC, Thomas Hayes, Gregory S. Spires, Mike Welton, and Wayne Side for injunctive relief and damages.   On June 21, 2019, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 2).   On August 6, 2019, Defendants filed Motions to Dismiss (ECF Nos. 58, 60). On August 30, 2019, the Court granted in part Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, granting a preliminary injunction to the extent specifically set forth on pages 13 through 16. (ECF No. 70).   On November 14, 2019, the Magistrate Judge issued a Report and Recommendation recommending dismissal of the claims against Wayne Side for lack of personal jurisdiction (ECF No. 90).   The Plaintiff objected to this Report and Recommendation, but on January 16, 2020, the Court "adopt[ed] and approve[d] in full" this Report and Recommendation. (ECF No. 98.)   On December 18, 2019, United States Magistrate Judge Robert J. Krask issued a Report and Recommendation granting in part and denying in part Defendants' Motion to Dismiss (ECF No. 60) various counts of the Complaint (ECF No. 93).   Both the Plaintiff and Defendants objected to this Report and Recommendation; thus, on February 28, 2020, the Court reviewed the Report and Recommendation *de novo* and granted in part and denied in part Defendant's Motion to Dismiss (ECF No. 102).   On March 23, 2020, Plaintiff filed a First Amended Complaint (ECF No. 108).   On November 13, 2020, the Court granted Plaintiff's unopposed Motion for Leave to Amend the First Amended Complaint (ECF No. 149).   On November 16, 2020, Plaintiff filed a Second Amended Complaint (ECF No. 151).   After the Court granted Plaintiff's Motion for Joinder (ECF No. 130) by Order entered on November 24, 2020 (ECF No. 153), Plaintiff filed a Third Amended Complaint on December 1,

2020 (ECF No. 156). This is the operative Complaint. There are also five Counterclaims pending. (ECF Nos. 113-117.) On July 7, 2021, the Court granted Plaintiff's Stipulation of Dismissal, dismissing the claims against Gregory S. Spires without prejudice (ECF No. 188).

On July 8, 2021, Defendants filed a Motion for Sanctions Pursuant to Rule 11 (ECF No. 193). On July 13, 2021, Plaintiff filed a Motion for Sanctions against Defendants Westly Greer and G&S Supply, LLC (ECF No. 195). On July 22, Plaintiff filed a Response in Opposition to Defendants' Motion for Sanctions Pursuant to Rule 11 (ECF No. 205). On July 27, 2021, Defendants filed a Response in Opposition to Plaintiff's Motion for Sanctions against Defendants Westly Greer and G&S Supply, LLC (ECF No. 206). On July 28, 2021, Defendants filed a Reply to Plaintiff's Response (ECF No. 207). On August 2, 2021, Plaintiff filed a Reply to Defendants' Response (ECF No. 208).

## III. PLAINTIFF'S MOTION FOR SANCTIONS

### A.  Spoilation of Evidence Standard of Review

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999)). "Under federal law, a court's authority to levy sanctions on a spoliator ultimately derives from two main sources. First, there is the 'court's inherent power to control the judicial process and litigation, a power that is necessary to redress conduct which abuses the judicial process.'" *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 505 (D. Md. 2009) (quoting *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 263–64 (2007)). Second, there is Federal Rule of Civil Procedure 37(e) which governs spoliation of electronically stored information ("ESI"). *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96,

103 (E.D. Va. 2018).  Movants must establish four threshold requirements "before a court decides if any spoliation sanction is appropriate: (1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery." *Id.* (citing *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 2483800, at *4 (E.D.N.C. June 7, 2017)).

Spoliation requires "more than the 'negligent loss or destruction of evidence,' as 'the alleged destroyer must have known that the evidence was relevant to some issue in the anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction.'" *Id.* at 104 (citing *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013)).  Further, "[c]ourts have broad discretion when deciding whether to impose spoliation sanctions." *Id.* at 103. (citing *Turner*, 736 F.3d at 281).  "If spoliation has occurred, then a court may impose a variety of sanctions, ranging from dismissal or judgment by default, preclusion of evidence, imposition of an adverse inference, or assessment of attorney's fees and costs." *Goodman*, 632 F. Supp. 2d at 505 (citing *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. 179, 191 (S.D.N.Y. 2007)).  Nonetheless, "the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Eshelman*, 2017 WL 2483800, at *4 (citing *Silvestri*, 271 F.3d at 590).  While the burden of proof on a motion for spoliation sanctions is unsettled, "the general approach of courts in the Fourth Circuit has been to apply the clear and convincing evidence standard, especially where a relatively harsh sanction like an adverse inference is sought." *Steves & Sons, Inc.*, 327 F.R.D. at 104 (explaining that "[s]ome courts have applied a preponderance of the evidence standard.").  As such, the Court shall impose a clear and convincing evidence standard here.

**B. Analysis**

**i. Timeliness of Spoliation Filing**

As a preliminary matter, Defendants argue that Plaintiff's spoliation motion was untimely filed.  First, Defendants argue that Plaintiff's motion is a discovery motion governed by Rule 37(e) of the Federal Rules of Civil Procedure and is thus untimely under the express terms of this Court's 16(b) Scheduling Order. (Defs.' Resp. at 9, ECF No. 206.)  Defendants allege that since Plaintiff's motion is a discovery motion, it should have been filed before the March 15, 2021 deadline for the completion of fact discovery. (*Id.* at 10.)  Second, Defendants argue that Plaintiff's spoliation motion is untimely because it should have been filed during the discovery phase, not after it had closed. (*Id.*)  Conversely, Plaintiff argues that while spoliation can touch upon discovery, at heart, its motion is an evidentiary issue and is timely under Rule 37. (Pl.'s Reply at 2, ECF No. 208.)  Further, Plaintiff is not seeking discovery-related sanctions because there would be no point and it would waste the Court's time. (*Id.* at 3.)

Rule 37 "does not contain any specific reference to the timing of the filing of a motion seeking spoliation sanctions." *Goodman*, 632 F. Supp. 2d at 506 (citing *McEachron v. Glans*, No. 98–CV–17(LEK/DRH), 1999 WL 33601543, at *2 (N.D.N.Y. June 8, 1999)).  However, Courts have identified several "factors that can be used to assess the timeliness of spoliation motions." *Id.* These factors include "how long after the close of discovery the relevant spoliation motion has been made;" "the temporal proximity between a spoliation motion and motions for summary judgment;" whether the spoliation was made on the eve of trial; "whether there was any governing deadline for filing spoliation motions in the scheduling order issued pursuant to Federal Rule 16(b) or by local rule;" and the explanation of the moving party as to why the motion was not filed earlier. (*Id.* at 506-08.)

Here, the parties do not dispute that Plaintiff's Spoliation Motion was filed after the close of discovery. (Defs.' Resp. at 9-10; Pl.'s Reply at 6.)   At the time of Plaintiff's filing, July 13, 2021, the parties were weeks away from their August 4, 2021 dispositive motion deadline. (Defs.' Resp. at 11; Pl.'s Reply at 6.)   Trial at the time of the filing was scheduled to commence on October 18, 2021, and there was no specific deadline in the rule 16(b) Scheduling Order for filing spoliation motions. (Defs.' Resp. at 12; Pl.'s Reply at 6; *see also* Amended Scheduling Order, ECF No. 159.) Defendants argue that there is no excuse for Plaintiff's delay in filing its Motion. (Defs.' Resp. at 12.)   Defendants assert that Plaintiff has known about this alleged spoliation for over two years— even at the time of the preliminary injunction filed early in this case—yet failed to seek a remedy from the Court until now. (*Id.*)   Plaintiff explains that while it was aware of the alleged spoliation during the preliminary injunction in this case, at the time, it did not have the opportunity to have an expert perform a full forensic examination of the computers or to perform any discovery to assist in determining what and how it had been affected by Greer's alleged spoliation. (Pl.'s Reply at 3.)   Further, Plaintiff's efforts to obtain additional information from Defendants were met with objections. (*Id.* at 3-4.)

While Plaintiff's instant motion is governed by Rule 37, it is not a discovery motion as argued by Defendants.  It is important to note "that spoliation sanctions motions often follow only where extensive ESI recovery efforts have failed, or after forensic review gives the movant a much better idea of the quantity and nature of unproduced, deleted ESI." *Steves & Sons, Inc.*, 327 F.R.D. at 108.  Not only did Plaintiff attempt to gather pertinent information via written discovery requests, it was also forced to wait until Greer's deposition to again ask Greer about the allegedly incorrect tablet password. (Pl.'s Reply at 4.)   Defendant cites to *Goodman* in support of its untimeliness argument. (Defs.' Resp. at 11-12.)   In *Goodman*, the Court found that the plaintiff's

spoliation motion was timely when it was filed "more than five months after the conclusion of discovery, and more than two months after dispositive motions had been fully briefed." 632 F. Supp. 2d at 509. The Court reasoned that "Goodman was [not] dilatory in filing his Motion for spoliation sanctions to a degree that would warrant denying it as untimely." *Id.* The *Goodman* Court noted that

> the dispositive motions had not yet been ruled on when Goodman's Motion was filed, Goodman did not attempt to reargue his summary judgment motion in his spoliation Motion, it was not filed on the eve on trial, and the relief granted in this Memorandum Opinion [would] not entail reopening discovery or delaying the upcoming trial.

*Id.* Here, Plaintiff filed the instant motion weeks before the dispositive motion deadline and months before trial, and additionally, the relief sought will not entail reopening discovery or delaying trial. As such, the Court finds that Plaintiff's spoliation motion is timely.

## ii. Required Elements for Spoliation

Of the four elements required to establish spoliation, Defendants agree that Plaintiff can establish the first and third elements—that ESI should have been preserved and that the loss was due to Greer's failure to take reasonable steps to preserve the ESI. (Defs.' Resp. at 14; *see* Pl.'s Mem. Supp. Mot. Sanctions at 12-19.) Accordingly, the Court will only examine the second and forth elements.

### ESI Is Lost and Irreplaceable

"Information is lost for purposes of Rule 37(e) only if it is irretrievable from another source, including other custodians." *Steves & Sons, Inc.*, 327 F.R.D. at 107 (citing *Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*, No. CV 14-1064, 2017 WL 1214424, at *2 (D.D.C. Mar. 30, 2017)). Irreplaceability does not require a party to "pursue every possible avenue for replacing or restoring the ESI, but it must show that it made some good-faith attempt to explore its

alternatives before pursuing spoliation sanctions." *Id.* at 109.  Plaintiff argues that the destroyed ESI is not available from another source. (Pl.'s Mem. Supp. Mot. Sanctions at 19.)  Plaintiff points to the DLA[4] documents downloaded by Greer onto the laptop that have never been produced or otherwise received by GMS as an example of lost ESI. (*Id.* at 20.)  According to BDO's forensic analysis, Greer downloaded twenty-one files from the DLA Internet Bid Board System ("DIBBS") onto the laptop, and the file names indicated that the downloaded files likely concerned competitive sales made by G&S to customers or potential customers of GMS. (*Id.* at 18.)  BDO was unable to recover those downloaded files and, while Defendants provided some DLA documents, none of the documents produced matched the request numbers of the files downloaded and deleted by Greer. (*Id.*)  In an effort to recover the DLA documents, Plaintiff issued a subpoena to DLA that was countered by a Motion to Quash from Defendants. (Pl.'s Reply at 13; *see also* Defs.' Mot. Quash, ECF No. 161.)  Furthermore, Plaintiff has been unable to obtain any information from third parties related to the DLA bids or sales with any of the request numbers of the downloaded files. (*Id.* at 18-19.)  Defendants claim that the DLA documents Plaintiff seeks are public information and that if Plaintiff does not have the documents that it needs, it is only because Plaintiff did not follow through on efforts to obtain them. (Defs.' Resp. at 18-19.)

Defendant's claim that the information sought by Plaintiff is public information misleading.  As highlighted by Plaintiff, documents on the DIBBS website are only retained for a few months which clearly limits Plaintiff's ability to access the sought-after documents.[5] (Pl.'s

---

[4] DLA documents refer to the Defense Logistics Agency ("DLA") through which most industrial sales to the military must be made. (Pl.'s Mem. Supp. Mot. Sanctions at 2-3.) The process begins when a customer agrees to purchase a product or kit through GMS; then sales agents work with the customer to ensure that the customer submits the proper information to DLA. (*Id.* at 3.) Once that occurs, DLA issues a "request for quotations" for the specific kit, which GMS's administrative staff provides to DLA. (*Id.*)

[5] The "DIBBS DOCUMENT RETENTION POLICY" on the DIBBS website provides that effective April 30, 2012, documents would be removed from the DIBBS website in accordance with specified timeframes. The longest of

Reply at 13.)  Plaintiff had Greer's laptop forensically examined, issued a subpoena to DLA, and sent discovery requests encompassing the documents in an effort to recover what Greer destroyed. It is apparent that Plaintiff has made a "good-faith attempt" to explore alternatives for replacing or restoring the destroyed DLA documents. *Sines v. Kessler*, No. 3:17-CV-00072, 2021 WL 4943742, at *9 (W.D. Va. Oct. 22, 2021).  Additionally, according to the BDO report, of the 3,397 files that Greer destroyed, BDO was only able to determine the original file names for 2,916 files before fileshredder destroyed the file names and contents. (BDO Report at 11, ECF No. 196-9.)  This means that BDO was unable to restore the names of 481 files destroyed by Greer. (Pl.'s Reply at 9 n.2.)  Because Plaintiff was unable to recover the names of those 481 files—and the files themselves—it is impossible for the parties to determine whether those files were relevant, let alone replace them.

As such, the Court finds that the DLA documents and the 481 permanently deleted files are both lost and irreplaceable. *See Steves & Sons, Inc.*, 327 F.R.D. at 109 (finding that supplier satisfied the loss of ESI element of rule governing failure to preserve ESI, with respect to documents that consultant deleted, that supplier did not receive from manufacturer, and that were still irretrievable); *Sines*, 2021 WL 4943742 at *9 (finding the ESI was both lost and irreplaceable where movant obtained some of missing ESI from other defendants and third parties but did not have a "complete record" of the sought-after documents); *Summers v. City of Charlotte*, No. 318CV00612 2022 WL 385163, at *5 (W.D.N.C. Feb. 8, 2022) ("While Plaintiffs have recovered select emails, they have not been able to obtain the complete records from the City. This is sufficient to show that the records are lost and irreplaceable.").

---

these timeframes is 120 days. *DIBBS Document Retention Policy*, Defense Logistics Agency (last visited February 17, 2022), https://www.dibbs.bsm.dla.mil/notices/msgdspl.aspx?msgid=675.

### iii. Sanctions Under Rule 37(e)(1) and (2)

"If the movant makes the threshold showing under Rule 37(e), the 'court must then consider whether the movant has established one of two options that would permit imposing sanctions.'" *Sines*, 2021 WL 4943742 at *3; *Steves & Sons, Inc.*, 327 F.R.D. at 109 ("[I]f the lost ESI cannot be restored or replaced by additional discovery, then the inquiry turns to the appropriate sanctions under the subsequent provisions of Rule 37(e)."). Sanctions under Rule 37(e)(1) require "finding prejudice to another party from loss of the information," while sanctions under Rule 37(e)(2) require a "finding that the party acted with the intent to deprive another party of the information's use in the litigation ." Fed. R. Civ. P. 37(e).

#### a. Intent to Deprive

"The Fourth Circuit has not spoken about the level of intent that a court must find to impose a sanction under Rule 37(e)(2)." *Steves & Sons, Inc.*, 327 F.R.D. at 110 (citing *Jenkins v. Woody*, No. 3:15CV355, 2017 WL 362475, at *17 (E.D. Va. Jan. 21, 2017)). "However, cases preceding the 2015 amendments to Rule 37 indicate that the spoliating party's conduct does not need to be in bad faith to qualify as intentional." *Id.* (citations omitted.) Plaintiff argues that the evidence demonstrates that Greer irrevocably destroyed all his files and data dealing with G&S with the intent to deprive Plaintiff of use of the information in litigation. (Pl.'s Mem. Supp. Mot. Sanctions at 25.) Plaintiff asserts that by virtue of his position as Director of Sales for GMS, Greer had access to almost all of the company's trade secrets and proprietary information. (*Id.*) After Plaintiff terminated Greer's employment, he attempted to download additional information from GMS's systems that Plaintiff assumes was for the purpose of competing against GMS more effectively. (*Id.*) Greer was instructed to maintain all of his information that might be relevant to Plaintiff's preparation for litigation. (*Id.*) Instead, Plaintiff argues that he willfully and intentionally deleted

all of his GMS and G&S work product and related information from two computers and has allegedly refused to provide Plaintiff with the password to the tablet that he used.[6] (*Id*)

Defendants argue that Greer did not act with an intent to deprive Plaintiff. (Defs.' Resp. at 24.) Defendants allege that the facts here demonstrate, at most, that the ESI was lost due to Greer's negligence, not any intentional misconduct. (*Id.*) Furthermore, Defendants assert that there is no indication that Greer acted with the requisite intent to deprive Plaintiff of any relevant information as his use of the File Shredder program served to delete copies of GMS documents that were available to GMS from other sources. (*Id.* at 25.)

The plain text of Rule 37(e) "makes clear that it is the party's 'failure to reasonable steps to preserve' [ESI], with the intent to deprive another party from using it in litigation that supports a logical inference that the 'lost information was unfavorable to the party who lost it.'" *Sines*, 2021 WL 4943742 at *3 (citing Fed. R. Civ. P. 37(e)(2)). Therefore, "a party's 'conscious dereliction of a known duty to preserve electronic data—whether passive or active—is both necessary and sufficient to find that the party acted with the intent to deprive another party of the information's use under Rule 37(e)(2).'" *Id.* at 10 (citing *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, 2019 WL 5694256, at *11 (E.D.N.Y. July 22, 2019)).

Greer's actions demonstrate an intent to deprive Plaintiff of use of the information stored on his desktop. Defendants do not dispute that Greer received an April 3, 2019 letter from Plaintiff in which Greer was instructed to "preserve any potentially relevant documents and information relating to" Plaintiff's breach of contract allegations stemming from Plaintiff's discovery of G&S.

---

[6] It is unclear whether the password that Greer provided was incorrect or impossible, as claimed by Plaintiff. (Pl.'s Mem. Supp. Mot. Sanctions at 19.) Defendants assert that Greer provided the password to the tablet and refute Plaintiff's claim that the password could not be a comma (",") as argued by Plaintiff. (Defs.' Resp. at 9 n.13.) Defendant further argues that the tablet allows for a "pin password option" that can include symbols and no numerical limit. Presently, there is not enough information for the Court to determine whether Greer gave Plaintiff the wrong password or if such a password was permitted.

(ECF No. 196-11 at 4; Pl.'s Mem Supp. Mot. Sanctions at 6-7; Defs.' Resp. at 14.)  On April 17, 2019, Greer received another letter from Plaintiff, reiterating that Greer was obligated to "preserve any and all potentially relevant information" and to return all Computer Equipment in his possession to Plaintiff. (ECF No. 196-12 at 2-3.)  Despite the clear instructions to preserve potentially relevant documents and information[7]—as discovered by the forensic examination conducted by BDO—on April 19, 2019, Greer proceeded to download File Shredder onto his desktop and destroyed all of the user-created files. (ECF No. 196-9 at 8-9; Pl.'s Mem. Supp. Mot. Sanctions at 7.)

The File Shredder website clearly states that "File Shredder is a free desktop application for shredding (destroying) unwanted files beyond recovery."   File Shredder, https://www.fileshredder.org/ (last visited Feb. 18, 2022).  During his deposition, Greer admitted to installing File Shredder on his laptop and destroying all of the documentation on the laptop before returning it. (ECF No. 200-2 at 12.)  When asked why he destroyed all of the documentation on the laptop, Greer responded that he "had a lot of personal information on there that [he] didn't want them to have." (*Id.*)  Greer further cemented his disregard for his preservation obligations when asked why he did not simply delete his personal information, to which he responded that he did not "know if [he] could have gotten all of it off there," and that he would "have to search." (*Id.*)  The Court also notes that on April 2, 2019, Greer contacted a GMS sales agent trainee, Amber

---

[7] The April 3, 2019 letter informed Greer that he had a legal obligation to preserve potentially relevant information including:

> written and electronic documents and information, such as customer lists, email messages and all attachments, word processing documents, text messages, phone and call logs, spreadsheets, databases, calendar entries, accounting and billing records, reports, systems, and related data or any other documents or files created on computer systems, and sound and/or video recordings (such as voicemail messages and video/audio files)….

(ECF No. 196-11 at 4; Pl.'s Mem Supp. Mot. Sanctions at 7.)

Wenrick, and directed her to delete "anything involving G&S" including text messages and emails. (ECF no. 196-4 at 9-11.)  While this request was sent before Greer received the litigation hold letters from Plaintiff, Greer's actions only further support his intent to cover his tracks by disposing of potentially relevant information.

Notwithstanding Greer's deposition testimony, Defendants make the bold assertion that Greer's actions were negligent at best and that there is "no indication that Greer acted with the requisite intent to deprive GMS of *any* relevant information." (Defs.' Resp. at 25 (emphasis in the original).)  Defendants' argument that Greer's use of the File Shredder program served to delete copies of GMS documents that were available to GMS from other sources also falls flat.[8] Defendants fail to present a shred of evidence indicating that Greer made a conscious effort to delete documents that he knew would be retrievable elsewhere.  Of the thousands of documents that Greer shredded, 481 of those files were unrecoverable both in content and name. As such, the parties and the Court have no way of determining the relevance of those 481 documents which further supports the Court's finding of willful spoliation. *Taylor v. Mitre Corp.*, 2012 WL 5473715, at *7 (E.D. Va. Sept. 10, 2012) (finding willful spoliation where plaintiff ran a program similar to File Shredder called CCleaner, resulting in the deletion of 16,000 documents, and for more than 6,000 of those documents, there was no way of telling what type of file was deleted).  It is apparent from Greer's actions that he acted with the intent to deprive GMS of *all* information stored on his desktop, including possibly relevant documents.  "Once an intent to deprive has been established,

---

[8] Defendants' claim that Greer's deletions were simply "imprecise" further strains credulity upon review of the File Shredder website's "Usage" page. (Defs.' Resp. at 15.) The page explains the various ways to go about shredding documents which include "Add File(s)" and "Add Folder(s)" options where users of the program can select the specific files or folders that they intend to shred. *Online Help For File* Shredder, File Shredder (last accessed Feb. 18, 2019), https://www.fileshredder.org/fileshredder-help.php.  Instead of selecting those options to avoid deleting possibly relevant documents while disposing of his alleged personal documents in accordance with his preservation obligation, Greer decided to destroy everything indiscriminately. Such actions reach beyond simple and even gross negligence.

Rule 37(e)(2) does not require an additional finding of prejudice," accordingly, the Court declines to rule on the issue of prejudice. *Capricorn Mgmt. Sys., Inc.*, 2019 WL 5694256, at *12 (citing Fed. R. Civ. P. 37, Advisory Committee Note, 2015 Amendment). We now turn to the appropriate sanctions pursuant to the Court's finding of intent.

b. Sanctions

As a preliminary matter, Plaintiff requests that the Court also find G&S liable for Greer's spoliation. (Pl.'s Mem. Supp. Mot. Sanctions at 22.)  "A party may be held responsible for the spoliation of relevant evidence done by its agents." *Goodman*, 632 F. Supp. 2d at 522 n.16 (citing *New Jersey Mfrs. Ins. Co. v. Hearth & Home Techs., Inc.*, No. 3:06–CV–2234, 2008 WL 2571227, at *7 (M.D. Pa. June 25, 2008) ("A party to a law suit, and its agents, have an affirmative responsibility to preserve relevant evidence. A [party]. . . is not relieved of this responsibility merely because the [party] did not itself act in bad faith and a third party to whom [the party] entrusted the evidence was the one who discarded or lost it.")).  Here, Greer is a partial owner of G&S and was employed by G&S at the time of the spoliation. (ECF No. 206-1 at 4; Pl.'s Mem. Supp. Mot. Sanctions at 4; Defs.' Resp. at 3.)  Greer also used the Plaintiff-issued laptop for work related to G&S. (Pl.'s Mem. Supp. Mot. Sanctions at 12.)  Because the laptop was clearly used in the course of his employment with G&S, and in "furtherance of the master's business," the Court finds that Greer was an agent of G&S at the time of the spoliation. *Nucor Corp. v. Bell*, 251 F.R.D. 191, 199 (D.S.C. 2008) (citing *Murphy v. Jefferson Pilot Commc'ns Co.*, 613 S.E.2d 808, 812 (S.C. App.2005)). As such, G&S is also liable for Greer's spoliation. *Id.* (finding agent's willful "alteration or destruction of relevant data" on laptop was directly attributable to defendant); *Goodman*, 632 F. Supp. 2d at 522 (same).

"[O]nly upon finding that the party acted with the intent to deprive another party of the information's use in the litigation,' the court may presume that the lost information was unfavorable to the party who lost it, instruct the jury that it may or must so presume, or dismiss the action or enter a default judgment." *Sines*, 2021 WL 4943742 at *3.  In terms of relief, Plaintiff "requests that the Court issue an adverse inference charge to the jury, alerting them to the fact that Greer, acting on his own behalf and as an agent of G&S, intentionally deleted potentially relevant files and that the jury should assume that whatever was on the Electronic Devices was unfavorable to Greer and G&S." (Pl.'s Mot. Sanctions at 1, ECF No. 195.)  Plaintiff also requests that the Court "strike Greer's counterclaim" and bar Greer from testifying at trial on his own behalf or on behalf of G&S, and that in the event Plaintiff calls Greer as an adverse witness at trial, Greer's cross-examination by defense counsel be limited to the scope of the direct examination." (*Id.* at 2.) Finally, Plaintiff requests that the Court "require Greer and G&S to pay for its reasonable attorneys' fees and costs incurred in preparing this Motion for Sanctions along with such other relief as the Court believes is necessary and just." (*Id.*)

The Court has found that Greer acted with an intent to deprive Plaintiff of the deleted information's use in litigation.  Accordingly, the Court may "instruct the jury that it may or must presume the information was unfavorable" to Defendants. (Pl.'s Mem. Supp. Mot. Sanctions at *10) (quoting Rule 37(e)).  The Court finds that Greer's blatant and intentional disregard for his obligation to preserve ESI on his desktop warrants an adverse inference instruction.  The Court further instructs that Greer and G&S shall pay Plaintiff's reasonable attorneys' fees and costs incurred in preparing its Motion for Sanctions. *See Goodman*, 632 F. Supp. 2d at 523 ("[I]n addition to a spoliation sanction, a court will award a prevailing litigant the litigant's reasonable expenses incurred in making the motion, including attorney's fees."); *Taylor*, 2012 WL 5473715

18

at *10 (E.D. Va. Sept. 10, 2012) (awarding reasonable attorneys' fees as a result of non-moving party's spoliation). The Court declines to impose any further sanctions requested by Plaintiff as the adverse instruction and reasonable attorneys' fees and costs serve the "prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Eshelman*, 2017 WL 2483800, at *4 (citing *Silvestri*, 271 F.3d at 590); *Turner*, 736 F.3d at 281 ("Spoliation is a rule of evidence, and the decision to impose sanctions for violations is one 'administered at the discretion of the trial court.'").

## IV. DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO RULE 11

Defendants filed a Motion for Sanctions Pursuant to Rule 11 seeking to dismiss Plaintiff's Third Amended Complaint with prejudice and receive an award of Defendants' costs and expenses. (Defs.' Mot. Sanctions at 1, ECF No. 193.) Defendants claim that Plaintiff failed to make a reasonable inquiry to determine that the Complaint "stood well-grounded in fact and was warranted by existing law." (Defs.' Mem. Supp. Mot. Sanctionsat 11, ECF No. 194.)

Rule 11 requires an attorney presenting a pleading to the Court to certify that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the pleading is not presented for an improper purpose, the legal contentions are "warranted by existing law," and the factual allegations are supported by the evidence. Fed. R. Civ. P. 11(b). "A complaint that is wholly unsupported by *any* information violates the investigation required by Rule 11 before filing a complaint." *Crawford v. Deutsche Bank AG*, 271 F. Supp. 2d 829, 832 (E.D. Va. 2003) (emphasis in the original) (citing *In re Kunstler*, 914 F.2d 505, 514 (4th Cir.1990)). "The Advisory Committee note to Rule 11 cautions against 'using the wisdom of hindsight' and emphasize[s] that pleadings should be tested 'by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.'" *Ross v. R.A.*

*N. Dev., Inc.*, 2011 WL 7004136, at *4 (E.D. Va. Nov. 18, 2011) (quoting Fed. R. Civ. P. 11 Advisory Committee's Note, 97 F.R.D. 165, 199 (1983)).  In evaluating reasonableness, courts "must remember that such sanctions are to be imposed sparingly" *Crawford*, 271 F. Supp. 2d at 832.

Defendants devote several pages arguing that Plaintiff should be sanctioned for its claims against Sky Spires. (Defs.' Mem. Supp. Mot. Sanctions at 19-23.)  However, Defendants' claim violates Rule 11's safe-harbor provision that requires that a motion for sanctions pursuant to Rule 11 "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service." Fed. R. Civ. P. 11(c)(2).  Here, Plaintiff filed a motion dismissing the claims against Sky Spires within the 21 days provided under the safe-harbor provision and two days before Defendants filed their Motion for Sanctions. (Pl.'s Resp. at 24-25, ECF No. 205; *see also* ECF Nos. 187, 188.) Accordingly, Defendants' failure to comply with the procedural requirements of Rule 11 "precludes the imposition of the requested sanctions." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004) (citing *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir.1995) ("The plain language of [Rule 11(c)(1)(A)] indicates that this notice and opportunity prior to filing is mandatory.  Plaintiffs did not comply with this procedural prerequisite. Therefore, the sanction and payment of costs and attorneys' fees ordered by the district court cannot be upheld under Rule 11.")).

The Court finds that Plaintiff engaged in a reasonable and adequate investigation before filing its complaint.[9]  Furthermore, the Court finds that Plaintiff's messages to Defendants airing

---

[9] The record demonstrates that the Court granted in part Plaintiff's Motion for Preliminary Injunction and denied in part Defendants' Motion to Dismiss. (*See* ECF Nos. 70, 102.) A complaint filed for an improper purpose would not survive such motions, especially considering the stringent standard that must be met for the Court to grant a

grievances regarding Defendants' conduct does not evidence an improper purpose to the extent required for Rule 11 sanctions. *See Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir.1995) ("[I]t would be counterproductive to use Rule 11 to penalize the assertion of non-frivolous substantive claims, even when the motives for asserting those claims are not entirely pure."); *Turton v. Virginia Dep't of Educ.*, No. 3:14CV446, 2015 WL 236699, at *3 (E.D. Va. Jan. 16, 2015) ("When a complaint is filed for the proper purpose of vindicating rights and one or more other purposes of which the Court 'does not approve,' sanctions are only appropriate if 'the added purpose is [ ] undertaken in bad faith or is [ ] so excessive as to eliminate a proper purpose.'"). There is no indication that Plaintiff acted in bad faith in filing suit

## V. CONCLUSION

For the reasons stated herein, the Court will grant Plaintiff's Motion for Sanctions Against Defendants Westly L. Greer and G&S Supply, LLC and deny Defendants' Motion for Sanctions Pursuant to Rule 11.

An appropriate Order shall issue.

/s/
Roderick C. Young
United States District Judge

Richmond, Virginia
Date:  March 22, 2022

---

preliminary injunction. *Cohen v. Rosenstein*, 691 F. App'x 728, 729 (4th Cir. 2017) ("A preliminary injunction is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought.")