IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| GMS INDUSTRIAL SUPPLY, INC., )<br>    Plaintiff, )<br>       v. )<br> )<br>G&S SUPPLY, LLC, *et al.*, )<br>    Defendants. )<br>                                 ) | Civil Action No. 2:19-cv-324 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on GMS Industrial Supply, Inc.'s Petition for Award of Plaintiff's Reasonable Attorney's Fees and Costs Incurred in Preparing its Motion for Sanctions (ECF No. 290). The motion has been fully briefed, and the Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J).  For the reasons stated below, the Court will grant in part and deny in part GMS Industrial Supply, Inc.'s Petition for Award of Plaintiff's Reasonable Attorney's Fees and Costs Incurred in Preparing its Motion for Sanctions.

**I. BACKGROUND AND PROCEDURAL POSTURE**

The facts of this case have been thoroughly laid out in prior Opinions. (*See* ECF Nos. 250, 252.)  Thus, only a brief recapitulation of the facts and procedural posture is necessary here.  GMS Industrial Supply, Inc. ("GMS" or "Plaintiff") is an industrial sales company that sells its products almost exclusively to military customers throughout the United States, Europe, and Asia. (Op. at 1, ECF No. 250.)[1]  In order to sell its products, Plaintiff utilizes sales agents who operate within specified territories where they contact personnel in areas that need industrial goods. (*Id.*)  In April of 2019, GMS Industrial Supply, Inc. discovered that two of its sales agents started a company

---

[1]The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions.

named G&S Supply, LLC ("G&S"). (*Id.* at 2.) Plaintiff further discovered that the pair had also recruited several of Plaintiff's other sales agents to sell goods for G&S. (*Id.*) Upon discovery of G&S, GMS sent letters to the sales agents working with G&S terminating their sales agent agreements with GMS. (*Id.* at 3.) Among the sales agents that were terminated was Westly Greer ("Greer"), Plaintiff's former Director of Sales. (*Id.*) On April 3, 2019, Plaintiff sent Greer a letter that informed him of his termination from GMS as a sales agent as well as his legal obligation to preserve all potentially relevant information and suspend any document destruction policies or automatic deletion functions. (*Id.*) On April 17, 2019, Plaintiff sent Greer another letter directing him to return GMS's property, including a laptop computer, desktop computer, a computer tablet, and two computer monitors (collectively, "the Computer Equipment"). (*Id.*) Upon receipt of the Computer Equipment, Plaintiff discovered that that all user-created files had been deleted from the laptop and that the tablet was inaccessible due to password protection. (*Id.*) Subsequently, Plaintiff hired BDO USA, LLC ("BDO"), a digital forensics and cyber investigations firm, to conduct a forensic examination on Greer's GMS-issued electronic devices. (*Id.* at 3 n.2.) BDO's forensic examination uncovered that on April 19, 2019, Greer connected a USB storage device to the desktop computer. (*Id.* at 4.) Shortly thereafter, Greer ran a Google search for the term "fileshredder," visited the File Shredder website, and downloaded and installed the file shredding program. (*Id.*) Greer then ran the file shredding program, thereby permanently deleting 3,397 files from the computer. (*Id.*)

On July 13, 2021, Plaintiff filed a Motion for Sanctions against Defendants Westly Greer and G&S Supply, LLC, seeking recovery for Greer's spoliation of evidence ("Spoliation Motion"). (ECF No. 195.) On March 22, 2022, the Court granted Plaintiff's Motion for Sanctions, finding that Greer's actions displayed an intent to deprive GMS of all information, including possibly

relevant documents. (Op. at 16, ECF No. 250.) Accordingly, the Court awarded Plaintiff its reasonable attorneys' fees and costs incurred in preparing its Motion for Sanctions. (Order at 1, ECF No. 249.) On May 26, 2022, Plaintiff filed Petition for Award of Plaintiff's Reasonable Attorney's Fees and Costs Incurred in Preparing its Motion for Sanctions and a Memorandum in Support (ECF Nos. 290, 292.) On June 23, 2022, Greer and G&S ("Defendants") filed the Response of Defendants Greer and G&S Supply in Opposition to Petition for Award of Plaintiff's Attorney's Fees and Costs Incurred in Preparing its Motion for Sanctions (ECF No. 324). On June 29, 2022, Plaintiff filed a Reply in Support of its Motion for Attorney's Fees (ECF No. 327).

## II. LEGAL STANDARD

The Fourth Circuit utilizes a three-step framework for calculating reasonable attorneys' fees. First, the court must "determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). Second, the court should "'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (quoting *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir.2002)). Third, "[o]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Johnson*, 278 F. 3d at 337.

Here, Defendants do not challenge the reasonableness of Plaintiff's rates. (Defs.' Resp. at 6, ECF No. 324.) Thus, the Court turns to the main source of disagreement as identified by the parties, the extent of the work for which Plaintiff seeks reimbursement. Defendants argue that Plaintiff's attorneys' fees request must be reduced because Plaintiff is entitled only to its reasonable fees and costs incurred in preparing the Spoliation Motion. (*Id.* at 5.) Specifically,

Defendants dispute costs incurred before Plaintiff began drafting its Spoliation Motion on June 1, 2022, and activities that Defendants claim bear little to no relationship to the Spoliation Motion. (*Id.* at 6.) Further, Defendants argue that the fees for tasks undertaken on or after June 1, 2022 that pertain to Plaintiff's Spoliation Motion must also be scrutinized for reasonableness under the Fourth Circuit's three-step framework. (*Id.*) The Court will examine each of Defendants' objections in turn.

### III. ANALYSIS

#### a. Recovery of Costs Incurred Before Plaintiff Began Drafting its Spoliation Motion

Defendants argue that accepting Plaintiff's submitted billings, the first day that Plaintiff began drafting its Spoliation Motion was June 1, 2021. (*Id.* at 5.) Defendants aver that Plaintiff should not recover for any fees incurred prior to this date. (*Id.*) Plaintiff argues that courts have recognized that attorneys' fees and related costs are appropriate where they are incurred by the movant in the course of developing the record necessary to bring a sanctions motion. (Pl.'s Reply at 6, ECF No. 327.) Plaintiff points to the Court's use of *Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494 (D. Md. 2009), to support the award of fees and costs. (*Id.* at 7.) Plaintiff asserts that *Goodman* indicates that courts are expected to compensate the parties injured by spoliation for more than just the fees directly associated with drafting and filing a motion. (*Id.*) Plaintiff offers the affidavit of Plaintiff's expert on attorneys' fees and costs, James R. Harvey, III ("Harvey"), which explains the process necessary for Plaintiff to undertake in order to make its Spoliation Motion. (*Id.*) Harvey submits that "the issue of spoliation of electronic records in commercial litigation involves a specialized subset of federal litigation skills often requiring additional time and attention to understand the technical process of expert consultants to then craft the appropriate legal arguments and pleadings for filings." (*Id.* at 8 (quoting James R. Harvey Decl. ¶ 12, ECF No.

4

292-2).) Harvey explains that this process results in additional hours required for the development and pursuit of a sanctions motion than would normally be incurred in a simple discovery dispute. (*Id.*) Plaintiff argues that the court in *Goodman* also recognized that the injured party should not have to shoulder the costs necessary to prove the negligent or willful acts of the spoliating party, which would be the impact if the Court were to accept Defendants' argument that "preparation" of a motion begins when pen is literally put to paper. (*Id.* at 8.)

The Court disagrees with Defendants' argument that Plaintiff's fee recovery should begin at the moment Plaintiff began drafting its Spoliation Motion. The court in *Goodman* clearly states that "in addition to a spoliation sanction, a court will award a prevailing litigant the reasonable costs associated with the motion *plus* any investigatory costs into the spoliator's conduct." 632 F. Supp. 2d at 524 (emphasis in the original); *see also Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, 2009 WL 1949124, at *11 (N.D. Cal. July 2, 2009) (awarding victim of spoliation "fees and costs incurred in developing the record on spoliation, and time spent researching and preparing [the] motion."); *Chan v. Triple 8 Palace, Inc.*, 2005 WL 1925579, at *10 (S.D.N.Y. Aug. 11, 2005) ("[C]ompensable costs may arise either from the discovery necessary to identify alternative sources of information or from the investigation and litigation of the document destruction itself.") (internal citation omitted). Indeed, "the effects of spoliation are not limited to a party's efforts to discover and to prove the spoliation and its scope." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 2011 WL 2552472, at *6 (D. Md. Jan. 24, 2011). It defies logic to award Plaintiff costs incurred while drafting the Spoliation Motion but prohibit Plaintiff from recovering the costs associated with substantiating the motion. Plaintiff would have been unable to draft the Spoliation Motion without first determining the extent of the spoliation, attempting to recover the spoliated documents, and researching the legal basis for requesting the spoliation ruling. (*Id.* ("[T]he willful loss or

destruction of relevant evidence taints the entire discovery and motions practice.").) Each of these actions, no doubt, took place before Plaintiff began drafting the Spoliation Motion. Accordingly, the Court declines to make a bright-line ruling barring Plaintiff from recovering costs incurred before Plaintiff began drafting the Spoliation Motion.

### b. Cost of Plaintiff's Forensic Vendor

Defendants argue that a large portion of the "costs" Plaintiff seeks are for fees paid to its computer forensics firm, BDO. (Defs.' Resp. at 3.) Defendants aver that Plaintiff received a jury award of $50,000 for BDO's charges related to Greer's violation of the Virginia Computer Crimes Act and that, by its petition, Plaintiff seeks a double recovery of its BDO-related expenses. (*Id.* at 3-4.) Defendants assert that the jury has already awarded Plaintiff for what it deemed appropriate for forensic expenses caused by Greer's violation and that the remainder of BDO's charges are for work performed pursuant to its initial engagement. (*Id.* at 4.) Defendants point to the BDO activities that occurred before June 2021 such as nonspecific "forensic analysis," searches of all Defendants' gmail accounts, e-discovery support and Relativity hosting, review of BDO declarations for use at the preliminary injunction hearing, and a dispute between GMS and BDO about BDO's billings. (*Id.*) Defendants argue that these tasks are unrelated to Greer and should be unrecoverable. (*Id.* at 5.)

Plaintiff argues that it bore the onerous burden of proving that the ESI at issue was "lost" under the applicable four-factor test. (Pl.'s Reply at 9, ECF No. 327.) According to Plaintiff, meeting this burden required Plaintiff's counsel to regularly confer with BDO regarding the nature of the information that was deleted and where it may be located outside of Greer's computer. (*Id.* at 10.) Plaintiff argues that it was also necessary for BDO to begin its investigation at the outset of litigation in order to provide information to prove the need for injunctive relief. (*Id.*) Plaintiff

6

asserts that all activities performed by BDO were necessary to establish that Greer spoliated relevant information and that Plaintiff was thereby prejudiced. (*Id.*)

As a preliminary matter, in its Reply—filed over two weeks after the jury award—Plaintiff failed to address the fact that the jury awarded Plaintiff $50,000 for Greer's violation of the Virginia Computer Crimes Act as a result of his spoliation. (*See* Jury Verdict at 20-21, ECF No. 317.) Under normal circumstances, it is likely that Plaintiff would be entitled to recover the reasonable costs associated with BDO's forensic analysis that uncovered Greer's spoliation. However, due to the jury award directly addressing the BDO costs associated with Greer's spoliation, the Court declines to award any further fees related to the forensic work performed by BDO in this matter.

### c. Block Billing

Defendants argue that Plaintiff's use of block billing—lumping multiple unrelated tasks into the same billing entry, without delineating the specific time spent on each activity—requires close scrutiny and a reduction in the total fees awarded. (Defs.' Resp. at 7.) Defendants argue that as almost every invoice for which Plaintiff seeks reimbursement for includes block billing and/or redactions, this Court should reduce Plaintiff's fee award by at least 10%. (*Id.* at 8.) Plaintiff argues that counsel's use of block billing is not dispositive. (Pl.'s Reply at 10.) Rather, Plaintiff argues that block billing only becomes an issue when it prevents the court from assessing the reasonableness of the time request. (*Id.*) Plaintiff avers that although a portion of the requested attorneys' fee are block billed, Plaintiff believes that it adequately addressed the issues and that the billing is reasonable. (*Id.*) Plaintiff admits that Defendants have correctly pointed out that on four entries, time is showing for work not related to Plaintiff's Spoliation Motion.[2] (*Id.* at 11 n.3.)

---

[2]Plaintiff rescinds its request for expenses on those unrelated tasks totaling in $1,440.00 and asks the Court to remove the related fees from the total requested. (*Id.* at 11 n.3.)

Plaintiff argues that it has proactively reduced its fee requests to account for block billing by having its expert on attorneys' fees review the unredacted, block billed entries and (1) independently estimate the reasonable time reflected in each entry, (2) review the time as allocated by the billing attorneys; and (3) discount those entries by 50%. (*Id.* at 11.)

The Court disagrees with Defendants' assertion that the use of block billing alone necessitates a 10% reduction in the requested fees. While contemporaneous time records are preferable, summaries or records that include "'for each attorney, the date, the hours expended and the nature of the work done'" are sufficient. *Antonio v. Sec. Serv. of Am., LLC*, 2011 WL 1230892, at *4 (D. Md. Mar. 30, 2011) (quoting *CoStar Grp., Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 n. 12 (1983) (a party "is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures."). Here, the Court is generally able to assess the hours expended and the nature of the work completed. Additionally, Plaintiff has taken great measures to account for its use of block billing and sufficiently reduced its fee request. Thus, the Court will not reduce Plaintiff's fee request on the basis of block billing alone.

### d. Clerical Tasks and Duplicative Attorney Work

Defendants argue that Plaintiff should be precluded from collecting fees for non-compensable clerical tasks that are simply part of managing the case and/or firm overhead. (Defs.' Resp. at 8.) Defendants aver that it is improper to block bill and comingle potentially compensable and non-compensable clerical work like downloading, reviewing files for information, and making logistical phone calls. (*Id.*) Defendants assert that a review of counsel's invoices indicates Plaintiff seeks attorneys' fees for non-compensable clerical tasks, most of which are found in block billed entries. (*Id.*) Defendants also argue that Plaintiff should not be reimbursed for duplicative attorney

work. Defendants point to several billing entries that allegedly indicate that a fair amount of fees that Plaintiff seeks to recover are duplicated efforts, most prominently in the spoliation research conducted by multiple Pender & Coward personnel. (*Id.* at 9.)

Plaintiff contends that it has properly billed for all attorney work performed and argues that the Supreme Court has recognized that there is a grey area of tasks that might be performed appropriately by either an attorney or a paralegal. (Pl.'s Reply at 11.) Likewise, Plaintiff asserts that the Fourth Circuit has noted that there is no single correct way to staff every lawsuit and that sometimes it is more economical and efficient for attorneys to do "non-legal" work. (*Id.* at 12.) Plaintiff also argues that Defendants do not point to or discuss any particular entries; instead, they list some page numbers they presumably believe contain clerical work and leave it to Plaintiff and the Court to determine what they are alleging. (*Id.* at 11.) As to Defendants' duplicative work claim, Plaintiff notes that Defendants only list two instances of alleged duplicative work. (*Id.* at 12.) In response, Plaintiff relies on the statements of its expert witness who explained that he did not find substantial duplication in effort. (*Id.*) Instead, Plaintiff's expert stated that different attorneys and staff were appropriately charged with different tasks and that "it is not uncommon for multiple partners to review and consider the appropriateness of a sanctions motion since they can be the cause of reciprocal claims that can lead to potential liability on behalf of the law firm." (*Id.* (quoting Harvey Decl. ¶ 11.).)

"While the fee applicant is under a primary duty to provide sufficient detail to justify a requested attorney's fee award, the party or parties opposing such an award have a concomitant duty to specify with particularity the basis for their objections." *Victor Stanley, Inc.*, 2011 WL 2552472 at *4. As noted by Plaintiff, Defendants fail to identify any particular entries in support of the claim that Plaintiff seeks attorneys' fees for non-compensable clerical tasks. Rather,

9

Defendants list a number of pages alleging that the listed pages contain clerical tasks within block billed entries. (Defs.' Resp. at 8.) However, the majority of the pages listed contain multiple time entries from various attorneys. Generally, "courts 'will not review any challenged entry in the bill unless the challenging party has identified it specifically and given an adequate explanation for the basis of the challenge.'" *Cross v. Fleet Rsrv. Ass'n Pension Plan*, 2010 WL 3609530, at *6 (D. Md. Sept. 14, 2010), amended in part, 2010 WL 4809126 (D. Md. Nov. 19, 2010) (internal citation omitted); *see also Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 2002 WL 31777631, at *10 (D. Md. Nov. 21, 2002) ("It is not the Court's burden to sift through literally hundreds of pages of billing records to look for similar instances of allegedly improper billing entries when the challenging parties have not thought the effort sufficiently important to undertake themselves."); *Victor Stanley, Inc.*, 2011 WL 2552472, at *4 ("To allow this Court to evaluate the objection fairly, this requires sufficiently detailed references to the challenged time entries and explanation for the basis of the challenge."). Accordingly, the Court will not address Defendant's generalized challenges related to the alleged billing of clerical tasks.

As to the allegations of duplicative billing, the Court will address the two illustrations identified by Defendants. Defendants first challenge the spoliation research conducted by partner Jeffrey Wilson, associate Ross Broudy, and summer clerks Scott Ingram and Y.C. Chen. (Defs.' Resp. at 9; Pl.'s Reply at 12 (identifying Ingram and Chen as summer clerks).) Upon review of the identified entries, it is apparent that the vast majority of the spoliation research was conducted by Jeffrey Wilson. (*See* ECF No. 292-1 at 27, 45, 47, 48, 49, 53-57, 59, 60, 65, 75, 77.) Spoliation research done by Ross Broudy, Scott Ingram, and Y.C. Chen appears sparingly throughout the billing entries. (*Id.* at 19, 26, 54, 56, 60.) Defendants argue that the Fourth Circuit has warned against generalized billing by multiple attorneys because it often produces unacceptable

duplication, and they request a reduction in Plaintiff's fees citing *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994). (Defs.' Resp. at 9.)  In *Caperton*, the Fourth Circuit recognized that the district court reduced Plaintiff's fees, in part, due to the "generalized nature of many billing entries that listed simply 'telephone call to Smith,' 'letter to client,' or 'legal research.'" *Caperton*, 31 F.3d at 179.  However, the Fourth Circuit reversed the district court's ruling as to this issue based on the understood complexity of the case and the district court's consideration of grounds deemed improper by the Fourth Circuit in addition to the generality of the billing entries. *Id.* at 180.  Here, the billing entries related to spoliation research include more detailed summaries than the examples given in *Caperton*.  Plaintiff's entries include details regarding the various issues considered by Plaintiff including file shredder research, spoliation as it relates to the claims within Plaintiff's complaint, and possible remedies that would flow from a spoliation finding. (*See* ECF No. 292-1 at 48 ("beginning research on spoliation and metadata"); 49 ("research authority regarding spoliation as it relates to business conspiracy"); 56 ("research element of spoliation concerning receipt of deleted information from other sources"); 57 ("research issues regarding agency law and role of owner in attempt to establish G&S's liability for Greer's spoliation; research whether knowledge of owner/manager is imputed to company and spoliation as it regards vicarious liability").)  Similarly, the billing entries by Pender & Coward attorneys regarding review of Defendants' opposition to the Spoliation Motion does not appear excessive or duplicative.  Therefore, the Court finds that Plaintiff's entries do not constitute unacceptable duplication and will not reduce Plaintiff's fees as they relate to this objection.

### e. Unrelated Tasks and Unsuccessful Claims

Defendants also argue that the Court should reject Plaintiff's request for attorneys' fees for the wide variety of activities that bear little or no relationship to the Spoliation Motion. (Defs.'

11

Resp. at 5.) Defendants point to tasks such as drafting the Complaint and TRO; retaining and corresponding with BDO; issuing, receiving, and reviewing discovery; preparing testimony and affidavits for the preliminary injunction hearing; drafting its computer crime claims; amending GMS's Complaint; researching the Court's Covid-19 restrictions; gathering information on the newly assigned judge; coordinating with GMS's damages expert; research unrelated to spoliation; and opposing Defendants' Rule 11 Motion. (*Id.* at 5-6.) Defendants assert that none of these services were performed for the preparation and filing of the Spoliation Motion and that the fees incurred for these unrelated activities must be excluded from any attorneys' fees award. (*Id.* at 6.) By Defendants' calculations, the cost of these unrelated activities totals approximately $22,000. (*Id.*) Defendants also argue that Plaintiff should not recover fees for time counsel spent on unsuccessful claims and Plaintiff's unsuccessful efforts to bar Greer from testifying at trial and to dismiss his counterclaim. (*Id.* at 7.)

Plaintiff argues that all activities performed by BDO and Plaintiff's counsel were necessary to establish that Greer spoliated relevant information. (Pl.'s Reply at 5.) Plaintiff argues that without laying the groundwork for its factual and legal claims in its motion, it would never have been able to establish the elements necessary to prove spoliation. (*Id.*) Additionally, Plaintiff argues that it was the prevailing party on the Spoliation Motion. (*Id.* at 9.) Plaintiff avers that while the tablet could be seen as evidence of spoliation, it was presented as evidence of Greer's intent, not a separate claim of spoliation. (*Id.*) As to the requested remedies, Plaintiff argues that drafting those requests took less than five minutes, so the effort spent on those requests was *de minimus* compared to the meat of Defendants' spoliation violation. (*Id.*)

In its Order granting Plaintiff's Motion for Sanctions, the Court awarded Plaintiff "its *reasonable* attorneys' fees and costs *incurred in preparing* its Motion for Sanctions." (ECF No.

251 at 1 (emphasis added).) Accordingly, the Court shall only award fees for completed tasks that are related to Plaintiff's Spoliation Motion. Defendants point to various tasks allegedly "wholly unrelated" to Plaintiff's Spoliation Motion. Upon review of the billing entries identified by Defendants, while some entries appear related to the Spoliation Motion, Plaintiff's billing summaries include several tasks that appear unrelated. For example, Plaintiff seeks to recover fees for tasks completed in connection to Defendants' Rule 11 Motion for Sanctions, Plaintiff's computer crime claims, and gathering information on the newly assigned judge among several other unrelated tasks. (ECF No. 292-1 at 75 ("review Defendants' Reply in Support of Motion for Sanctions"); 64 ("research Virginia Computer Crimes Act"); 37 ("Research new judge and background"); 35 ("Review of Court's covid orders and current docket to determine if jury trials have resumed"); 52 ("research admissibility of expert report in conjunction with a dispositive motion"); 55 ("begin review and analysis of 'choice of law' issue regarding agency, imputed knowledge, and conspiracy").) Further, several of the aforementioned unrelated tasks are comingled with block-billed entries containing tasks related to the Spoliation Motion. Consequently, it is nearly impossible for the Court to decipher the dollar amount attributed to each unrelated task. In similar situations, "courts frequently have reduced entire fee applications, or portions thereof, by a stated percentage" to address deficiencies in time entries. *Thompson*, 2002 WL 31777631, at *13 (" In reviewing the voluminous time records submitted in support of this fee petition, the Court often has reduced portions of the fee requests by stated percentages to adjust for some factor that made the amount claimed by Plaintiffs, in its totality, unreasonable."); *Denton v. PennyMac Loan Servs.*, LLC, 252 F. Supp. 3d 504, 525 (E.D. Va. 2017) ("The traditional remedy for block billing is to reduce the fee by a fixed percentage reduction.") (quoting *Jones v. Southpeak Interactive Corp. of Del.*, No. 3:12CV443, 2014 WL 2993443, at *9 (E.D. Va. 2014),

13

aff'd, 777 F.3d 658 (4th Cir. 2015)). Based on the Court's review of the unrelated tasks and understanding of the many complexities of this litigation, the Court will reduce Plaintiff's total fee award by five percent (5%). *Victor Stanley, Inc.*, 2011 WL 2552472, at *2 ("A trial court may exercise its discretion in determining the lodestar amount because it possesses 'superior understanding of the litigation,' and the matter is 'essentially' factual.") (quoting *Thompson v. HUD*, No. MJG–95–309, 2002 WL 31777631, at *6 n. 18 (D. Md. Nov. 21, 2002)).

Finally, as to unsuccessful claims, only a small fraction of the Memorandum in Support of Plaintiff's Spoliation Motion discussed Greer's failure to provide the password to his tablet.[3] (ECF No. 196 at 19.) Given Plaintiff's success in achieving a finding of spoliation, a reduction is unwarranted. *Two Men & A Truck/Int'l, Inc. v. A Mover Inc.*, 128 F. Supp. 3d 919, 931 (E.D. Va. 2015) (finding that given plaintiff's success in achieving a finding of contempt, a reduction in fees was not necessary).

---

[3] Of the approximately 12 pages containing Plaintiff's spoliation analysis, approximately three-quarters of one page discussed Greer's failure to provide the password to his tablet.

## IV. CONCLUSION

For the forgoing reasons, the Court will grant in part and deny in part GMS Industrial Supply, Inc.'s Petition for Award of Plaintiff's Reasonable Attorney's Fees and Costs Incurred in Preparing its Motion for Sanctions as follows. After subtracting the costs incurred by BDO, Plaintiff's admittedly unrelated work totaling $1,440.00, and reducing the total amount of attorney's fees by five percent (5%), the Court awards attorney's fees to Plaintiff in the amount of $95,022.05.[4]

An appropriate Order shall issue.

Richmond, Virginia  
Date: August 23, 2022

/s/ _____  
Roderick C. Young  
United States District Judge

---

[4] According to the Declaration of William A. Lascara, Plaintiff's counsel "billed fees for their work on an hourly basis in the amount of $101,539.00." Five percent of that amount is $5,076.95. (Lascara Decl. at 2, ECF No. 292-1.) After subtracting $5,076.95 and the $1,440.00 of unrelated work from the total amount of billed fees, the amount due to Plaintiff is $95,022.05.