IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| GMS INDUSTRIAL SUPPLY, INC., <br>     Plaintiff, <br><br>         v. <br><br><br> G&S SUPPLY, LLC, *et al.*, <br>     Defendants. | Civil Action No. 2:19CV324 (RCY) |

**MEMORANDUM OPINION**
**(On Plaintiff's Motion for Additur, or in the Alternative, a New Trial)**

This matter comes before the Court on Plaintiff's Motion for Additur, or in the Alternative, for a New Trial (ECF No. 333). The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decision-making process. E.D. Va. Local Civ. R. 7(J). Accordingly, having reviewed the parties' submissions and for the reasons set forth below, the Court will deny Plaintiff's Motion.

## I. BACKGROUND[1]

This action presents a lengthy and complex factual and procedural history that has been previously produced in the Court's opinions. Only the facts pertinent to this specific motion are produced herein. Plaintiff GMS Industrial Supply, Inc. ("GMS") sells industrial products to military customers. (Compl. ¶ 18, ECF No. 1.) On June 20, 2019, GMS filed a complaint against G&S Supply, LLC ("G&S Supply"); Westly Greer ("Greer"); Sabrina Greer; Greer Group, LLC;

---

[1] The Court incorporates by reference the facts set forth in the Memorandum Opinion issued on August 23, 2022, *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, No. 2:19-CV-324, 2022 WL 3635325 (E.D. Va. Aug. 23, 2022), and the Court also incorporates by reference the procedural history set forth in the Memorandum Opinion issued on March 22, 2022. *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, No. 2:19-CV-324, 2022 WL 853626 (E.D. Va. Mar. 22, 2022).

1

Gregory K. Spires; County Roads, LLC; Thomas Hayes; Gregory S. Spires; Mike Welton; and Wayne Side, asserting subject matter jurisdiction under 28 U.S.C. § 1332. (*Id.* ¶¶ 12-16.) Among other claims, GMS alleged that, while employed by GMS, Defendants solicited GMS sales agents and customers to sell for competing companies and misappropriated trade secret information, breaching their fiduciary duty of loyalty. (Third Am. Compl. ¶ 1, ECF No. 156.)

Beginning May 31, 2022, and ending June 8, 2022, the parties tried this action before a jury. (*See* ECF Nos. 297, 299, 300, 304, 305, 308, 312.) At trial, the parties presented evidence that indicated that GMS paid Greer "$396,832.59 during the period beginning on the date G&S (Greer's company) first made a competing sale [(2017)] and ending when Greer became a sales agent in 2019." (Mem. Supp. Mot. Additur or New Trial 4, ECF No. 334.) The jury also heard evidence "indicating Greer's salary was $60,000 from 2012 to 2015, and $75,000.12 from July 1, 2015 onwards." (Mem. Opp'n Mot. Additur or New Trial 3, ECF No. 339.)

With regards to damages, the jury was instructed in Jury Instruction 31, which reads:

> "GMS has the burden of proving, by a preponderance of the evidence, the nature and extent of its damages. *If* you find in favor of GMS, you must determine the total dollar amount of GMS's damages, *if any*, that were caused by the breach of fiduciary duty by the defendant, Westly Greer. In determining such damages, you shall consider any economic losses which plaintiff has had or will probably have in the future, including: A. Anything of value or any profit the defendant, Westly Greer, received as a result of the breach of fiduciary duty; B. Any loss of profits which GMS could reasonably have expected to earn had the fiduciary duty not been breached; and C. Any compensation defendant Westly Greer received from GMS for services performed during the period in which he engaged in activities constituting a breach of his duty of loyalty, even if part of those services may have been properly performed.

(Jury Instruction No. 31, ECF No. 319) (emphasis added). The jury deliberated and returned its verdict on June 10, 2022 (Special Verdict Form, ECF No. 317). The jury found Greer breached his duty of loyalty to GMS, and awarded GMS $59,000 in damages for the breach. (*Id.* 2) In total, the jury awarded the following damages: (1) for Westly Greer's breach of his fiduciary duty of

loyalty, GMS was awarded $59,000 in damages (Special Verdict Form Questions Nos. 1-2, ECF No. 317); (2) for Westley Greer's actions in violation of the Virginia Computer Crimes Act, GMS was awarded $50,000 in damages (*Id*. Nos. 45, 46); (3) for GMS's breach of the 2019 Sales Agent Agreement, Wesley Greer was awarded $13,087.99 (*Id.* Nos. 64-67); (4) for GMS's breach of its 2017 Sales Agent Agreement, Sabrina Greer and Greer Group, LLC were awarded $9,760.50 in damages, and Greg Spires and County Roads, LLC were awarded $14,231.32 (*Id.* 68-75); and (5) for GMS's breach of its 2016 Sales Agent Agreement, Thomas Hayes was awarded $5,000 and Mike Welton was awarded $7,500. (*Id.* Nos. 76-83.). With regards to the breach of loyalty claim, the Special Verdict Form completed by the jury did not require the jury to identify the specific actions that led to the breach, the date of the breach, how the jury calculated the damages, or whether it awarded GMS damages based on lost profits or the compensation paid to Greer. (*See* Special Verdict Form 2, ECF No. 317.) It simply asked whether there was a breach of the "fiduciary duty of loyalty" and to list "the amount of [GMS's] damages from [Greer's] breach of his fiduciary duty of loyalty. (*Id.*)

On July 8, 2022, Plaintiff filed the instant Motion for Additur, or in the Alternative, a New Trial (Mot. Additur or New Trial, ECF No. 333). Plaintiff asserts that on Count 1 of the Third Amended Complaint, the jury should have awarded GMS $396,832.59 – the undisputed amount of Defendant Westly Greer's compensation between September 15, 2017, and when he became a GMS sales agent in 2019, not the $59,000 the jury actually awarded. (Mem. Supp. Mot. 3.) In the alternative, the Plaintiff seeks for a new trial as to the damages for the breach of loyalty claim. (*Id.*) On July 22, 2022, Defendant Westly Greer filed his Opposition to Plaintiff's Motion (Mem. Opp'n Mot.), and Plaintiff filed its Reply on July 29, 2022 (Reply Br., ECF No 343).

## II. LEGAL STANDARD

Rule 59 of the Federal Rules of Civil Procedure provides that a litigant may move to alter or amend a judgment. *See* Fed. R. Civ. P. 59(e). "A district court has the discretion to grant a Rule 59(e) motion only in very narrow circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002) (internal citations and quotations omitted). Additur is the process by which a trial court increases the amount of the damages awarded by a jury to avoid a new trial on the grounds of inadequate damages. *Additur*, BLACK'S LAW DICTIONARY (11th ed. 2019). The Seventh Amendment states, in part, that "no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. CONST. amend. VII. In *Dimick v. Schiedt*, the Supreme Court interpreted the Seventh Amendment's re-examination clause to prohibit additur in federal court. 293 U.S. 474, 476-79 (1935); *see also UOP, Inc. v. Infilco Degremont, Inc.*, 448 F. Supp. 145, 147 (E.D. Va. 1978) ("[E]xcept in those cases in which the power to increase a jury verdict existed at common law in 1791, the Seventh Amendment right to trial by jury in civil cases is violated when a federal district court conditions the denial of a new trial upon the agreement of the defendant to increase the award of damages to a figure the court deems proper."). As a matter of procedure, a federal court may only increase the damages awarded by a jury by use of additur if the amount of damages is clear as a matter of law. 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2816 (3d ed. 2022).

Under Federal Rule of Civil Procedure 59(a), a court may grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). The Fourth Circuit has interpreted this Rule to mean that "the

district court must set aside the verdict and grant a new trial if . . . (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 346 (4th Cir. 2014) (internal citation omitted). "The decision to grant or deny a new trial is within the sound discretion of the district court." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998).

### III. DISCUSSION

**A. Motion for Additur**

Plaintiff GMS argues that state substantive law – in this case, Colorado state law[2] – governs challenges to the amount of a jury award. (Mem. Supp. Mot. 5.) In essence, GMS argues that additur is substantive, not procedural, and cites *McMonigle v. Walton* as the authority for this proposition. No. 5:03CV00069, 2007 WL 1231435, at *1 (W.D. Va. 2007). Under Colorado law, GMS argues, the trial court has the power to increase a verdict when the "amount in question is undisputed or liquidated and the jury has failed to follow the instructions and returned a verdict for a lesser sum." (Mem. Supp. Mot. 5 (citing *Cole v. Angerman*, 501 P.2d 136, 138 (Colo. Ct. App. 1972)).)

Relying on *Dimick v. Shiedt* and cases from the Eastern District of Virginia that follow *Dimick*, Defendant Greer responds that a federal district court is precluded from increasing a jury's damage award. (Mem. Opp'n Mot. 6); *see* 293 U.S. 474, 487 (1935). However, if Colorado law applies, Greer argues that "mere disagreement with the amount of damages is not a sufficient ground to overturn an award of damages which is supported by competent evidence in the record."

---

[2] As defendants Westly Greer, Sabrina Greer, Greer Group, and G&S Supply, LLC, are Colorado residents who acted in Colorado, the Court applied substantive Colorado law in this case. (Mem. Opp'n Pl. Mot. Summ. J. 6, ECF No. 252.)

5

(Mem. Opp'n Mot. 8 (citing *Lee's Mobile Wash v. Campbell*, 853 P.2d 1140, 1143 (Colo. 1993)).) Defendant contends that Plaintiff has not established that the jury ignored its instructions in awarding damages. (*Id.* 9.)

An examination of GMS's authority, *McMonigle v. Walton*, reveals that GMS is asking the Court to extend *McMonigle* past its holding: the court in *McMonigle* explained that, as an introductory matter, "although remittitur is generally available in federal court, additur is not." *McMonigle*, 2007 WL 1231425, at *1, n.1. *McMonigle* cites *Gasperini v. Ctr. for Humanities*, 518 U.S. 415 (1996). In *Gasperini*, the Court held that a New York law establishing the standard by which an appellate court grants a new trial for excessive damages was considered substantive law. *Id.* at 426. The Court reaffirmed the discretion that federal courts have to overturn excessive verdicts or to order a new trial "conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." *Id.* at 434. But the Court in *Gasperini* explicitly distinguished both remittitur and ordering new trials for excessive damages from additur, noting that additur in federal courts was unconstitutional under the Seventh Amendment. *Id.* at 433.

GMS reads *Gasperini* as allowing federal district courts to use state law in "addressing excessive or inadequate jury verdicts to have effect without detriment to the Seventh Amendment." (Reply Br. Mot. 5 (citing 518 U.S. at 419).) But even if the Court were to adopt this expansive reading of *Gasperini*— instructing federal courts sitting in diversity to apply state law in determining additur[3]— additur is still not justified under Colorado state law. Colorado courts grant

---

[3] In *Gasperini v. Center for Humanities*, the Court decided whether a New York state statute that gave appellate courts the right to review the size of jury verdicts was substantive or procedural. 518 U.S. at 426. The Supreme Court analyzed the statute to determine whether it was substantive or procedural. *Id.* Using the "twin aims of the *Erie* rule" – discouragement of forum-shopping and avoidance of inequitable administration of the laws – the Court examined whether the application of New York state law would be outcome affective. *Id.* at 428. A law is outcome affective if it "ha[s] so important an effect upon the fortunes of one or both of the litigants that failure to apply it would unfairly discriminate against citizens of the forum State or be likely to cause a plaintiff to choose the federal court." *Id.* (citing *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)) (internal punctuation omitted). The Court found New York's law to be substantive with a procedural instruction. *Id.* at 428-29. In this case, Colorado's law

additur in limited circumstances, finding it within the court's discretion to increase a verdict in cases when the court finds the amount in question to be undisputed. *Cole v. Angerman*, 501 P.2d 136, 138 (Colo. App. 1972). Further, Colorado courts show a reluctance to overturn a jury decision unless the damages are "completely unsupported by the record." *D.R. Horton, Inc.-Denver v. Bischof & Coffman Constr., LLC*, 217 P.3d 1262, 1274 (Colo. App. 2009) (citing *Husband v. Colorado Mountain Cellars, Inc.*, 867 P.2d 57, 60 (Colo. App. 1993)).

The Court is similarly reluctant to alter the jury's verdict in this case. After a seven-day trial, the jury deliberated for two days before returning with the verdict. (*See* ECF Nos. 299-300, 304, 305, 308, 312, 315, 316). The jury was instructed that it must consider a variety of factors, only one of which was the compensation received by Westly Greer when he was an employee of GMS. (Jury Instruction No. 31.) The jury considered all of the factors outlined in its instructions and awarded GMS $59,000 in damages, an amount not unsupported by the evidence presented to the jury during the trial. Neither the jury instruction nor the verdict form required the jury to award GMS the full compensation GMS paid to Greer. (*See* Jury Instruction No. 31; Special Verdict Form 2.) Given that GMS's damages from Greer's breach of the duty of loyalty were not "undisputed," the Court declines to increase the amount of damages the jury awarded to GMS. *Cole*, 501 P.2d at 138.

GMS next argues that the Court should award additur under federal law. (Mem. Supp. Mot. 6). GMS points to the three exceptions when a court may increase a jury verdict under federal law: (1) mayhem, (2) upon a writ of inquiry, (3) or "where the amount of plaintiff's demand was

---

allowing additur is similarly outcome affective – the difference between federal law not allowing additur and state law allowing additur in the amounts of hundreds of thousands of dollars —a substantial amount. *See id.* at 430 n.11. The difference of hundreds of thousands of dollars between federal and state court "ha[s] so important an effect upon the fortunes of one or both of the litigants that failure to [apply] it would [unfairly discriminate against citizens of the forum State or] be likely to cause a plaintiff to choose the federal court." *Id.* at 428 (alteration in original).

7

certain, as, for example, in an action of debt." *UOP, Inc.* 448 F. Supp. at 147 (citing *Dimick*, 293 U.S. at 479). GMS contends that the amount of damages in this case is undisputed—Westly Greer's GMS compensation between September 15, 2017 and January 2019, when Greer became an independent contractor ($396,832.59). (Mem. Supp. Mot. 7.)

Courts have held that the "undisputed damages exception" is narrow and applies "only when damages claims are definite and incontrovertible." *See Clay v. Gordon*, No. 98-6408, 2000 WL 191936, at *3 (6th Cir. Feb. 10, 2000) (aggregating cases). The Fourth Circuit has explained that, in cases of additur, "a jury's determination of damages is entitled to substantial deference." *Potter v. Crestwood Gold Club, Inc.*, Nos. 95-2451, 95-2881, 1997 WL 20409, at *3 (4th Cir. Jan. 21, 1997). As explained above, the jury was given several factors to consider in awarding GMS damages, only one of which was the compensation received by Westly Greer when he was an employee of GMS. (Jury Instruction No. 31.) The jury was not provided with a formula or specific way in which it had to calculate damages—only the factors it must consider in determining the total damages award. *Id.* Further, while the jury heard about Greer's compensation, the jury never heard how much Greer's compensation was based on salary and how much was based on commission. (Mem. Opp'n Mot. 3.) The jury considered the factors outlined in its instructions and awarded GMS $59,000 in damages. (Special Verdict Form 2.) The Court gives the jury "substantial deference" and finds that the undisputed damages exception does not apply because, within the bounds of its instructions, the jury could have found that GMS was only entitled to $59,000 in damages for Greer's breach. *Potter*, 1997 WL 20409, at *3. The Court declines to grant GMS additur under federal law.

### B. Motion for a New Trial

In the alternative, GMS argues that, if the Court declines to increase the damages awarded by the jury, the Court should award a "new trial on the issue of the appropriate amount of damages." (Mot. Additur or New Trial 1.)

In considering whether to award a new trial on damages, the Court must determine whether the jury's verdict is against the weight of the evidence or based on evidence which is false. *Atlas Food Sys. and Servs. v. Crane Nat. Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996); *see* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial . . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). When a federal district court sits in diversity, state law is used to assess the legal adequacy of damages. *See Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 167 (4th Cir. 2018) (applying North Carolina law to determine whether the federal jury's damages award was legally inadequate).

Under Colorado law, damages are legally inadequate if "it can be said with certainty that the [damages are] grossly and manifestly inadequate or so small as to indicate clearly and definitely that the jury neglected to consider the evidence or was influenced by prejudice, passion, or other improper considerations." *Steele v. Law*, 78 P.3d 1124, 1126 (Colo. App. 2003); *see also Mince v. Butters*, 616 P.2d 127, 130 (Colo. 1980). [M]ere "disagreement with the amount of damages awarded is not a sufficient ground to overturn an award of damages which is supported by competent evidence in the record . . . and . . . [o]nly upon a showing of arbitrary or capricious jury action, or that the jury was swayed by passion or prejudice, should an appellate court overturn a jury verdict." *Lee's Mobile Wash v. Campbell*, 853 P.2d 1140, 1143 (Colo. 1993). A search of

9

case law found only about a dozen cases in the past fifty years where Colorado courts found a case to meet this high bar. *See, e.g.*, *Peterson v. Tadolini*, 97 P.3d 359, 362 (Colo. App. 2004) (finding inadequate a jury award of $0 in non-economic damages to a plaintiff who had shown undisputed evidence of pain and suffering and loss of enjoyment of life); *Mince*, 616 P.2d at 128 (overturning the court of appeals' ordering a new trial when a jury awarded $1,500 in compensatory damages to a child who was struck by a pickup truck operated by an intoxicated driver); *Reynolds v. Farber*, 577 P.2d 318, 320 (Colo. App. 1978) (granting the plaintiff a new trial because the jury did not follow the court's instructions).

GMS argues that Jury Instruction Number 31 required the jury to award GMS the entirety of Greer's salary from September 15, 2017, until his resignation in January of 2019 – $396,832.59. In effect GMS argues that the jury did not follow the jury instructions. The jury was instructed that "If [it] f[oun]d in favor of GMS, [it] must determine the total dollar amount of GMS's damages, *if any*, that were caused by the breach of fiduciary duty by the defendant, Westly Greer. (Jury Instruction No. 31) (emphasis added.) To determine damages, the jury was instructed to consider: (1) Greer's profit received as a result of the breach of fiduciary duty, (2) any loss of profits suffered by GMS, and (3) Westly Greer's compensation during the period in which he was disloyal. (*Id.*) The phrase "if any" in the instructions indicates that the jury could have found in favor of GMS and still awarded zero damages based on its analysis of the factors the Court instructed it to consider. The Court does not find the verdict so small as to "indicate clearly and definitely that the jury neglected to consider the evidence or was influenced by prejudice, passion, or other improper considerations," *see Steele*, 78 P.3d at 1126, and declines to find that the $59,000 the jury awarded to GMS in Count One is inadequate as a matter of Colorado law.

As the Court finds the verdict was not inadequate as a matter of law, the Court will not order a new trial on the issue of damages.

## IV. CONCLUSION

Considering the parties' submissions in light of the above factors, the Court finds that (1) GMS is not entitled to additur under federal procedural law or under Colorado state law, and (2) the verdict was not so small as to "indicate clearly and definitely that the jury neglected to consider the evidence." *Steele*, 78 P.3d at 1126. Accordingly, because no miscarriage of justice occurred, the Court will deny Plaintiff's Motion for Additur, or in the Alternative, for a New Trial (ECF No. 333).

An appropriate Order shall issue.

                                                                                             /s/_____
                                                                                            Roderick C. Young
                                                                                            United States District Judge

Richmond, Virginia
Date: October 17, 2022